ROBERT ROBSON v. BENJAMIN OSBORN.

Whatever question there may formerly have been, respecting the right of an infant to sue by his next friend, the question was settled by the decision of this Court, (in favor of the right) in Cannon v. Hemphill, 7 Tex. R. 184 ; and any one may sue as next friend, although there be a guardian, if the guardian do not dissent, and it appear to the Court to be for the benefit of the infant, and *a fortiori* where the guardian has left the country and failed to perform the duties which devolved upon him for the preservation of the right of his ward.

Where a tax title under the Act of 1848 is in issue, it devolves upon the purchaser to prove the performance, by the Assessor and Collector, of the acts which are conditions precedent to the power to sell ; after that, it devolves upon the adverse party to prove that the requisitions of the law, as to the time and mode of making the sale, had not been complied with.

A tax title is inadmissible evidence to sustain a suggestion of possession and improvements, in good faith.

Error from Colorado. Action of trespass to try title by Benjamin Osborn, by his next friend, Isam Tooke, against Robert Robson, commenced March 16th, 1853.

Plea in abatement that W. W. Thompson was the guardian of the plaintiff and the proper person to bring the action. Exceptions to this plea overruled. Trial of plea in abatement, and verdict for the plaintiff. It appeared in the course of the trial of the plea in abatement, that Thompson had gone to California in 1849, taking the minor with him, and that neither had returned. Special exception, that the plaintiff, being a minor, could not sue by next friend, overruled. Plea of not guilty and suggestion of adverse possession for one year and valuable and permanent improvements in good faith. The plain-

tiff proved his title. The defendant offered in evidence two tax deeds, one on a sale for taxes of the year 1846, and the other on a sale for taxes of the year 1848. The plaintiff objected on the ground that it was necessary first to prove the authority of the Assessor and Collector to make the sale. And the objection was sustained. To which the defendant objected. The defendant then offered the deeds in connection with parol proof that he had been in adverse possession of the premises in good faith more than a year before the action was commenced, and had made certain valuable and permanent improvements thereon, and the value thereof. Plaintiff objecting;—objection sustained; defendant excepted. Verdict and judgment for plaintiff.

*J. H. Robson*, for plaintiff in error. I. In the case of Cameron v. Hemphill, 7 Tex. R. 201, it was decided by this Court that an infant could maintain a suit by his next friend, but this decision was made upon the validity of a judgment rendered in the spring of 1843, in a suit where some of the parties were minors and sued by their next friends. It is contended for the plaintiff in error, that by provisions of the statutes passed since 1843, the law on the subject has been changed, and that at the date of the institution of this suit an infant could not sue by his next friend. (Hart. Dig. Arts. 1534, 1535, 1536.)

We contend, that under the provisions of the law of 1848, the only mode in which a minor can prosecute a suit is by his guardian.

This construction of the law of 1848 is supported by a reference to Section 44 of the Act of 1846, regulating proceedings in the District Court, where it is enacted that " suits for " title or for the possession of lands, or for any right attached " to or growing out of the same, or for any injury or damage " done thereto, may be instituted by executors, administrators " or guardians," &c. (Hart. Dig. Art. 703.)

II. In the case of Yenda v. Wheeler, 9 Tex. R., this Court

has recognized and adopted a distinction between "the power to sell" and "the regularity of the sale," and in New York where by Statute the tax deed was made conclusive evidence of the regularity of the sale, the Supreme Court of that State, in construing the Statute, decided that although the deed is conclusive evidence of the regularity of the sale, it is not so of the power to sell, and that the Statute applies only to the proceedings to be had after the right and power to sell are acquired. But we contend that there is a very material distinction between the New York Statute and our own on this subject; for, under the former "the Comptroller's deed is conclusive evidence of the regularity of the sale," while under the latter the "tax deed, when recorded according to law, is *prima* "*facie* evidence that all the requisitions of the law have been " complied with in making the sale."

The "regularity of the sale" and "a compliance with the requisitions of the law in making the sale," are, we conceive, two very different and distinct things. The words "regularity of the sale" can only apply to those matters which relate directly to the sale itself, such as, that a sale actually took place,—that notice of the sale was given, that the sale was made at the legal time and place, and that the purchase money was paid, &c. But the words that "the requisitions of the law have been complied with in making the sale," will admit of a much wider and broader interpretation. They embrace not only the facts relating directly to the sale itself, but those facts also which clothe the officer with the legal power to sell or "make the sale."

A distinction has been drawn in several of the States between a sale by a Sheriff under execution, and by a Tax Collector, by virtue of his assessment and levy; and it has been held that deviations of a Sheriff in the manner of executing his power are held not to prejudice *bona fide* purchasers at his sale, but such deviations on the part of the Tax Collector are held to be fatal. This distinction is alluded to but not adopted by this Court in the case of Hadley v. Tankersly, 8 Tex.

Rep. And we submit that it is a distinction without a difference, and is in contravention of general and well settled principles of law. (2 Litell's R. 65 ; 3 Bibb, 328 ; Hardin, 348 ; 5 J. J. Marsh. 65 ; 3 Monroe, 271, 272.)

The authority, then, of the Sheriff and Tax Collector to sell are, we contend, strictly analogous, and when either of them has once acquired the authority to sell, under the Statute, and has executed that authority, all their acts which relate directly to the sale itself, will, independent of any statutory provision on the subject, be presumed to have been done correctly. (See same authorities before referred to.)

If this be the law, why the necessity of the Legislature enacting that the Assessor's deed shall be *prima facie* evidence that " the requisitions of the law have been complied with in making the sale," if by the term " requisitions" was meant the mere legal notice of the sale, selling at the legal time and place, payment of the purchase money and such other matters as relate directly to the sale itself, all of which facts would, on the production of the Assessor's deed, have been presumed to have been done on general principles of law and independent of any legislative enactment on the subject ?

In the case from 12 Smedes & Marshall's R. 498, it was held that since the deed was made *prima facie* evidence of the performance of the previous requirements of the law, the burthen of proof was changed from the purchaser at tax sale to the original proprietor of the land. And in the case of Williams v. Peyton, 4 Wheat. R. 77, one of the reasons given by the Court for their decision against the validity of the tax deed is, that " in the Act of Congress under which the sale took place " there is no declaration that conveyances of land sold under " the Act shall be deemed *prima facie* evidence of the valid- " ity of the sale," from which we may safely conclude that if such a declaration had been contained in the Act, the burthen of proof would have been changed from the purchaser at the tax sale to the original proprietor of the land.

How are we to restrict the meaning of the term " requisi-

tions" in the law applicable to Assessors and Collectors, to the mere acts relating directly to the Assessor's sale, when we find that all of the acts to be done previous to the sale are to be performed by the officer himself, including the acts anterior to the levy, and which give him the authority to sell, as well as those which are subsequent to the levy and which relate to the mere act of selling? Is it not as much a requisition of the law in making the sale that the property to be sold should have been previously assessed in the manner required by the Statute, as that the notice of the time and place of the sale should have been given, or the purchase money paid?

III. But, if we are wrong in this position, we contend that the Court erred in refusing to permit the defendant to introduce the said deeds in evidence, in conjunction with the testimony, for the purpose of showing that he was an adverse possessor in good faith for more than one year next previous to the institution of this suit, of the premises in controversy, and that he had made permanent and valuable improvements on the land sued for, without the necessity of making proof at the same time that the requisitions of the law had been complied with in making the sale. The admissibility of the proof will depend on its sufficiency to establish two facts:

1st. That the defendant was an adverse possessor of the premises in controversy.

2d. That he was a possessor in good faith.

Adverse possession has been defined to be "an actual, continued, visible, notorious, distinct and hostile possession." (6 Serg. & Rawle, 21; 2 Litell, 66; 3 Mass. R. 344; 9 Johns. R. 180; 18 Johns. R. 40; 1 Johns. Cases, 49.

Did the testimony offered and rejected by the Court conduce to show that the defendant was a possessor of the premises in controversy in good faith?

The term "bona fide," or in good faith, is taken from the Civil Law, and consequently the proper construction of the term will best be arrived at by a reference to the Civil Law authorities. In the Civil Code of Louisiana we find it stated

that " the possessor in good faith is he who has just reason
" to believe himself the master of the thing which he possesses,
" although he may not be in fact, as happens to him who
" buys a thing which he supposes to belong to the person sell-
" ing it to him, but which in fact belongs to another." (Civil
Code La. Art. 3414.)

Again. " By the term just title in cases of prescription,
" we do not understand that which the possessor may have
" derived from the real owner, for there no prescription would
" be necessary, but the title which the possessor may have re-
" ceived from any person whom he honestly believed to be
" the real owner, provided the title was such as to transfer the
" property."

" And by the phrase " transfer the property," we under-
" stand not such title as shall have really transferred the pro-
" perty, but a title which by its nature would have been suffi-
" cient to have transferred the property, provided it had been
" derived from the real owner, such as a sale, exchange, legacy
" or donation." (Civil Code La. Art. 3450, 3451.)

And in the Louisiana decisions we have the following ex-
position of the law, as we find it stated in the Civil Code :
" If a person who possesses under a title which proves on
" investigation to be deficient, may reasonably have believed
" it was perfect and valid, he ought not to be considered a
" knavish possessor."   (6 Martin, 508.)

It is also a maxim of the Civil Law that good faith is al-
ways presumed, and bad faith is never presumed—it must be
proved.   (Civil Code La. 3447 ; Dormat, Book 3, Tit. 7, Sec.
4, Art. 13 ;  6 Martin, 569.)

The tax laws of 1848 and 1850 make it incumbent on the
Assessor to perform certain duties, both anterior and subse-
quent to his levy, and prescribes the manner in which these
duties shall be performed, and when the sale is effected, the
Assessor is required to make and execute a deed for the pro-
perty sold, to the person or persons purchasing the same, which,
when recorded according to law, shall be *prima facie* evi-

dence that all the requisitions of the law have been complied with in making the sale. How then does the purchaser take the land which is sold for taxes? He takes it believing that the title is vested in him by the conveyance from the Assessor, subject to the right of redemption within the time prescribed by law. So far as good faith is concerned, the question is not, Was the title of the purchaser good? but, Did the purchaser believe the title to be good? Did he act fairly and honestly in making the purchase? and the question must be answered by a reference to the facts of the case, and to the law under which the purchase was made. The law under which the purchase was made in the case now before the Court, made the Assessor's deed *prima facie* evidence that all the requisitions of the law have been complied with in making the sale. Suppose then the party purchasing had previous to the sale examined the law, and finding there was no restriction or qualification put upon the word "requisitions" he had come to the very natural conclusion that the term "requisitions" was applicable to all the duties incumbent on the Assessor, both before and subsequent to the levy, and that he honestly believed that the Assessor's deed would be *prima facie* evidence that all these "requisitions" had been complied with, would this Court, even if it restricted the meaning of the term "requisitions" to those duties of the officer which related directly to the sale itself, say that the purchaser acted in bad faith, simply because he had not sufficient legal acumen to give a general statutory phrase a limited and technical application? Might not the purchaser have reasonably believed under the law, as it existed at the time of the purchase, that he had received a title for the land in controversy which was good against the world, unless the original proprietor had shown that some of the "requisitions" of the law had not been complied with, either previous or subsequent to the levy. If he could reasonably have entertained this belief, then under the Louisiana decision, which we have quoted, he ought not to be considered a "knavish possessor," in other words he should be considered a possessor in good faith. 6 Martin, 508.)

We contend, also, that "good faith" like adverse possession, is a question of fact and not of law. It depends for its existence or non-existence on the circumstances of each particular case, and the presumption being that a party is a possessor in good faith, until the contrary appears, it is peculiarly the province of the jury, as in all other matters of fraud, to say whether the facts of a case are sufficient to establish bad faith in the possessor.

*G. W. Smith*, for defendant in error. I. Suit by next friend is proper. (Cannon v. Hemphill, 7 Tex. R. 184.)

II. It is contended there was no error in ruling out the deeds. (Yenda v. Wheeler, 9 Tex. R. 408; Hadley v. Tankersly, 8 Id. 12.)

To say the deed is *prima facie* evidence of an authority to sell, and that this authority was pursued would be placing the deed of an Assessor and Collector on higher grounds than a Sheriff's deed.

III. That the plaintiff was not a possessor in good faith is apparent; that he entered on the land with full notice of the defendant's claim, and that he had no title himself, is demonstrable from the evidence adduced, and the testimony excluded could not have been of any avail to the plaintiff, and hence was properly ruled out by the Court. (Civil Code of La. Art. 495; 4 Martin, 675; Briscoe v. Bronaugh, 1 Tex. R. 326; Lee v. Hernandes, 10 Id. 138; 11 Id. 503.)

Burrill's Law Dictionary defines a purchaser in good faith to be one who believes that no other person has a better right to the possession than himself. (Part. 1st page 155, and cites 1 Mackeld. Civil Law, 244, 234, and 1st Inst. 285.)

WHEELER, J. Whatever question there may formerly have been respecting the right of an infant to sue by his next friend, that question was settled by the decision of this Court in the case of Cannon v. Hemphill. (7 Tex. R. 184.)

It seems that, in general, any one who will undertake the office, may be the *prochein amy* of an infant; and may maintain the suit in that capacity, if it appears to the Court to be for the benefit of the infant. And although an infant has a guardian assigned him by the Court, or appointed by will, yet where he is plaintiff, the course in Chancery, it is said, is not to call the guardian by that name, but to call him the next friend. (10 Paige, 235; Daniel's Chy. Pr. 89.) An infant may sue by his next friend, notwithstanding he have a guardian, if the guardian do not dissent. (Id.; 11 Verm. R. 273; Danl. Chy. Pr. Ch. 3, Part 2, Tit. "INFANTS.")— *A fortiori*, he may do so where the guardian has left the country, and has failed in the performance of the duties which devolved upon him for the preservation of the rights of his ward. The matter pleaded in abatement, therefore, was wholly foreign to the case; and was no answer to the suit. It was immaterial to the defendant whether the plaintiff had a guardian or not. The judgment which might be rendered in the case, would be as conclusive of the matters therein litigated and determined, as if the suit had been by guardian, instead of by a next friend. The plea presented an immaterial issue, and might have been disregarded, or treated as a nullity and stricken out by the Court: and it is now quite immaterial what may have been the rulings of the Court upon the trial of the plea; as the right result was attained, though with a very unnecessary expenditure of time and trouble.

The principal, and the only questions in the case, which are of sufficient difficulty or importance to require notice, relate to the rights claimed by the defendant under his tax titles; and 1st. Whether it devolved on the defendant claiming under those deeds to prove a compliance with the legal prerequisites of the power to sell for taxes, and 2nd. Whether a defendant who has acquired and holds possession by purchase from one who had not the authority or power to sell, can he a possessor in good faith.

In the case of Yenda v. Wheeler (9 Tex. R. 408) the dis-

tinction was recognized between the power to sell, and the regularity of the sale. And we have no hesitation in holding with the authorities there cited, that though the statute makes the Assessor's deed *prima facie* evidence that the requirements of the law have been complied with in making the sale; it is not thereby made evidence of a compliance with the prerequisites to the acquisition and exercise of the power to sell: and that the statute applies only to the proceedings to be had after the right and power to sell are acquired. (2 Comstock, 66; 18 Johns. 441.) If, therefore, the plaintiff would have avoided the title, by reason of the non-observance of the requirements of the law "in making the sale;" that is, in executing the power to sell, which had been acquired by a compliance with the prerequites to its exercise, it devolved on him to prove the non-observance of the provisions of the law relating to the time and manner of making the sale; but as the power to sell, in this instance, was a naked power not coupled with an interest, it devolved on the defendant to prove that the prerequisites to the exercise of that power had been complied with. (4 Wheat. R. 77.) To hold the reverse would be, as has been well said by counsel for the appellee, to place an Assessor's deed on higher ground than a Sheriff's deed, and to give a greater effect to the former than the law allows to be given to the latter; for a party claiming under a Sheriff's deed must produce the judgment and execution, from which the officer derives the power to sell. Such is not believed to have been the intention of the Legislature.

The defendant having failed to make the required proof his tax deed was rightly held not to confer on him a valid title to the land in controversy. Was the possession acquired under it a possession in good faith? We think clearly not. He cannot be a possessor in good faith, who acquires the possession from one who had no power to give it, if he either knew, or by the use of proper diligence, might have known the want of power in his vendor. He who assumes the authority to sell the land of another must produce his power of attorney, and he who

buys from an agent must look to his authority; because he is not the apparent owner, and his right to sell depends on the existence and validity of the power under which he assumes to act. This the purchaser must look to at his peril; and he cannot protect his purchase as an act of good faith towards the real owner, known to be such, on the ground that he believed the pretended agent had authority; when by an examination of the act or acts relied on as conferring the authority, he might have known that he had not. It cannot be good faith towards the real owner to take and assert adverse possession of his property under one whom he either knew or by the use of reasonable diligence might have known, had no authority to dispose of it. A possessor by purchase at a Sheriff's sale surely could not claim to be a possessor in good faith, if the Sheriff's deed was unsupported by a judgment and execution conferring on him authority to make the sale. The present does not differ from that case in principle. We conclude therefore that the defendant could not claim to be a possessor in good faith under his tax titles; and that the Court did not err in so holding. We are of opinion that there is no error in the judgment and that it be affirmed.

Judgment affirmed.