## W. S. STEWART v. JOHN KEMP ET AL.

(Case No. 1087.)

1. PLEADING — NEW PARTIES.— A defendant in trespass to try title answered, denying that he was in possession, and after averring that he had sold and conveyed the land after the filing of the petition, but before service of citation on him, and without knowledge that he was sued, asked that his vendee be made a party defendant. *Held* —

    1. The answer was properly disregarded by the court.

    2. The refusal to make the defendant's vendee a party, even if he might properly have been made a party, was not an error of which the defendant could complain.

2. TAX TITLE — EVIDENCE.— A defendant in trespass to try title offered in evidence the condemnation of the land to be sold for taxes by the county court on November 1, 1867, at a special term thereof, his certificate of purchase, and tax deed. *Held* —

    1. No authority existed for the holding of a special term of the county court under the constitution of 1866.

    2. The evidence was properly excluded; the judgment of condemnation and all proceedings thereunder were alike invalid.

3. QUÆRE — PURCHASER AT TAX SALE.— Whether a purchaser of land at tax sale, whose title is invalid, but who neither knew, nor by proper diligence could have known, when he purchased, the invalidity of his deed, is entitled to have refunded to him taxes which were a charge upon the land before the entering of a decree cancelling the tax deed, *quære*.

APPEAL from Matagorda. Tried below before the Hon. W. H. Burkhart.

The opinion states the case.

*A. E. Pearson* and *Fred C. McCamley,* for appellant.

I. A purchaser of land, before citation is served on his vendor, is a necessary party. Jennison *v.* Halbert, 47 Tex., 188; Story's Eq. Pl., sec. 156.

II. In such a case suit is not notice, and *lis pendens* does not apply. See Bouvier's Law Dic., under head of "Lis Pendens."

III. The deed and certificate of purchase should have gone to the jury under proper instructions.

IV. Such a deed, after two years from the purchase, cannot be attacked for want of authority in the officer to make the sale. Acts of 11th Leg. (1866), p. 154.

V. The county judge, under the law of 1866 and the then constitution, had the right to call a special term for such purposes as condemning lands to sale for taxes. Const. of 1866, secs. 15, 16, p. 14, art. IV; Pasch. Dig., p. 936.

VI. Such county courts had all the jurisdiction of the former county courts, one of whose powers was to call a special term. 2 Pasch. Dig., art. 6068; O. & W. Dig., 265; Laws of 11th Leg. (1866), p. 44, sec. 3.

VII. Neither the constitution nor statutes forbade such a special term, and *ex officio,* when unrestrained, the presiding officer has the right to hold special terms, the terms of the county court being independent of each other in each county, and not dependent on terms in other counties, as the district court is. Const. of 1866, art. IV, secs. 15, 16; Pasch. Dig., art. 6068; O. & W. Dig., 265; 3 Tex., 516.

VIII. Defendant had a right to have refunded him his purchase money, taxes and interest, if he had no deed. Pasch. Dig., art. 7502; Laws of 1871, 1st Sess., p. 52, secs. 24–32; Laws of 1873, p. 191, sec. 3; p. 143, sec. 24.

*A. P. McCormick,* for appellees.

GOULD, ASSOCIATE JUSTICE.—Kemp and others, claiming to be the owners of the B. F. Jacques headright league,

brought this suit on December 1, 1877, to recover 3,760 acres of said league from W. S. Stewart, and to cancel a deed made to said Stewart on June 22, A. D. 1875, by Rugeby as sheriff, and collector of taxes, reciting the purchase of the land by Stewart at a tax sale on November 9, 1867.

The defendant answered, denying that he was, or had been, in possession of the land, and stating that on December 7, 1877, before any citation was served on him and without any knowledge of the institution of this suit, he had sold and conveyed the land to Minnie J. Stewart, who was the owner and only necessary defendant, asking that she be cited to defend. He also specially excepted to the petition because of the failure to tender sums paid by defendant by way of taxes, penalties and costs incurred against the land sued for, by plaintiffs' laches. He also specially answered, alleging the levy and assessment, in the year 1867, of county and state taxes, amounting with penalties and costs to $5.96; the condemnation of the land to be sold for taxes by the county court of Matagorda county on November 1, 1867; sale and purchase on November 9, 1867; the failure to redeem for over two years the deed of June 22, 1865; that plaintiffs have paid no taxes on the land since 1861, and that defendant has paid taxes from 1867 to 1877 inclusive; asking, if his title to the land should be held invalid, that he recover back all sums so paid for taxes, with interest and penalties as in cases of redemption, and that the same be held a lien on the land, and the land decreed subject thereto.

The court declined to order Minnie J. Stewart to be made a party, overruled the exceptions to the petition, and on the trial excluded the defendant's deed and the judgment of the county court condemning the land to be sold; also his evidence that he had paid the taxes on the land since the year 1867 to the time of trial. The evi-

dence of defendant being all excluded and the plaintiffs' title established by written muniments, the jury under the direction of the court returned a verdict for the plaintiffs, and there was judgment accordingly for the recovery of the land and the cancellation of the tax deed.

We are of opinion that the court did not err in disregarding the answer of defendant, suggesting that he had, after suit filed, sold the land to Minnie J. Stewart. The answer did not amount to a disclaimer, nor did it state enough to show that Minnie J. Stewart was a necessary or proper party. Even if she might have been made a party, we do not see how appellant is injured by the refusal of the court.

We are further of the opinion that the tax deed, certificate of purchase and judgment of condemnation were all properly excluded. The judgment condemning the land purports to be made on November 1, 1867, at a special term of the county court. By the constitution of 1866 and the act approved October 25, 1866, "To organize the county courts," etc., that court was held by the judge of the county court "once in every two months," "commencing on the first Mondays in February, April, June, August, October and December of each year, may remain in session until the business is disposed of." Const. of 1866, art. IV, secs. 15, 16; Laws of 11th Leg. (1866), p. 44, sec. 4. No provision appears to have been made for special terms of the county court. That court is not to be confounded with the police court created under the same constitution. The county court had jurisdiction to try cases both civil and criminal, and it was on the county court, and not on the police court, that the "act for the assessment and collection of taxes," approved November 10, 1866, sought to confer the power of condemning lands to be sold for taxes. (Laws of 11th Leg., p. 153, sec. 23.) As it appears that the county court acted without authority in holding the special term at which the judgment of

condemnation offered in evidence was rendered, that judgment and all of the subsequent proceedings predicated thereon were alike invalid.

Appellant submits the proposition that "defendant had a right to have refunded to him his purchase money, taxes and interest, if" (though) "he had no deed."

If the defendant in good faith bought the land at a sale for taxes, which he neither knew, nor by proper diligence might have known, to be invalid, and by his purchase, paid taxes which were a valid charge on the land, we are not prepared to say that the court should have allowed the owners the equitable relief of cancelling the tax deed, without requiring them to refund the payments of which they had received the benefit. We have, however, been cited to no case where such a rule has been enforced, as to sales for taxes, in the absence of some statutory provision on the subject.

In Blackwell on Tax Titles (3d ed., p. 491), it is said that a court of chancery will impose terms upon the complainant in granting relief, and a case is cited from Ohio, where the court set aside a tax sale for fraud, but required the complainants to "refund the purchase money and interest, with the penalty of fifty per cent. allowed by law." Dudley v. Little, 2 Hammond, 509. From the language used it may be inferred that there was a statute in Ohio on which the decision was based, and that inference is strengthened when it is found that there was such a statute there a few years later. See Blackwell on Tax Titles, p. 492; Gillette v. Webster, 15 Ohio, 623.

In the case of Osborn v. Robson, a purchaser at a tax sale was denied compensation for improvements, on the ground that he either knew, or might have known, the invalidity of the sale. 13 Tex., 307. So here it would seem that the defendant ought to have known that the judgment of condemnation was a nullity, and in buying at a tax sale under such a judgment did not so act in good

faith as to give him an equitable right to be recompensed on losing the land. See Cooley on Taxation, ch. 17; also p. 544; Polk *v.* Rose *et al.,* 25 Md., 153.

The plaintiffs' title was established by the deeds introduced, and there being no other evidence before the jury, the court did not err in instructing them to find for plaintiffs. Reid *v.* Reid, 11 Tex., 585.

AFFIRMED.

[Opinion delivered January 21, 1881.]