## J. W. HOUSE ET AL. v. H. P. STONE.

(Case No. 1793.)

| 64 | 677 |
| 84 | 368 |
| 64 | 677 |
| 85 | 273 |

1. TAX SALE — REVISED STATUTES, ARTICLE 4711.— To constitute a valid tax sale of unrendered property subject to taxation, it is essential that the proper officer shall substantially comply with article 4711, Revised Statutes. See opinion for assessment and listing of such property held insufficient under the statute.

2. SAME.— The statute contemplates the performance by the assessor of a formal, solemn act, which is to constitute the basis for enforcing, if necessary for the collection of the taxes due on property, the divestiture of the owner's title to it; and the act should clearly manifest upon its face its character and intention, by appropriate recitals, if its validity as an assessment is left to stand alone upon a schedule, disconnected from any other evidence than its existence in a blank book in which the assessor assessed the property in question.

3. SAME — EVIDENCE.— The evidence of the act of assessment of the property must be made clearly to appear. If entered by the assessor in a blank book kept in his office, the mere use of such a book for such a purpose in no wise dispenses with the necessity of showing in his entries that he officially acted in the premises by a recital of the doing of all such acts as were necessary in order to subject the property thus assessed by him to sale for taxes due on it.

4. SAME.— The authority for the officer's making the assessment is, that the property has not been listed to him as declared in the statute, and the assessment should show, in some appropriate manner, that it was done by the assessor in accordance with such authority, and that the assessment thus made was of property falling within the category of such as was thus subject to taxation and had accordingly been assessed by him.

5. SAME.— The lots of land must be definitely and distinctly described, and parol proof cannot supply the deficiency in the description or boundaries. These must be ascertained from what is written. The question is not one of intention, but of fact. What did the assessor do? On what specific lot was the tax laid? These questions must be answered from the record.

6. TAX TITLE — IMPROVEMENTS.— If a tax title shows upon its face that it is void, it cannot be the foundation for a claim for the value of improvements made in good faith. Hatchett v. Conner, 30 Tex., 104.

7. GOOD FAITH — CLAIM FOR IMPROVEMENTS.— A possessor in good faith is one who not only supposes himself to be the true owner, but is ignorant that his title is contested by one claiming a better title. Houston v. Sneed, 15 Tex., 307. Such a one is entitled to the value of his improvements, though it should turn out that his title was defective, or that another had the superior title. The possessor must have reasonable ground to believe that he is the true owner. Dorn v. Dunham, 24 Tex., 366. This is a question of fact for the jury.

8. EVIDENCE.— One claiming under an invalid tax title, not void on its face, is entitled to adduce evidence as to improvements under his suggestion of good faith, and to have that issue determined. French v. Grenet, 57 Tex., 273, and Wofford v. McKinna, 23 Tex., 36, approved, and Robson v. Osborn, 13 Tex., 298, questioned.

9. CASES CITED — GOOD FAITH.— Hutchins *v.* Bacon, 46 Tex., 408; Sartain *v.* Hamilton, 12 Tex., 219, and Hill *v.* Spear, 48 Tex., 583, cited to show that the question of good faith is one of fact. A party's knowledge of the existence of an adverse title, superior, as it may turn out, to his own, or a knowledge as to the muniments of his own title with which the law charges him, and notwithstanding he knows the contents of them, and in fact that their defects are in law fatal to the validity of his title, is nevertheless not rigidly held responsible for his innocent errors as to the legal interpretation of either the validity and superiority of the adverse title, or of the inferiority of his own.

10. SAME.— It is a question of fact to be determined whether he did in good faith *believe* his own to be the true and superior title. The application of the maxim that "every man is held to know the law" is not as to this class of cases recognized, but expressly disclaimed by our courts.

11. SAME.— But good faith *alone*, regardless of the character of title under which a party claims, does not entitle him to recover the value of his improvements. If a person does not look to the character of the title by which he enters upon and improves land, but recklessly acts on the presumption that any deed conveys a title, he does so at his own risk. If there are no grounds for his questioning the fact that he has neither a title nor the semblance of an apparent title, the law will conclusively presume that his claim is not based on good faith. Miller *v.* Brownson, 50 Tex., 583.

12. TAX TITLES.— It is settled that tax titles, when in every respect complete, may constitute perfect assurances of title; they may constitute the basis of good title under the statute of limitations independent of any judicial determination as to their validity; and under certain circumstances they are to be deemed colorable titles. Though invalid, a tax title is not necessarily without meritorious consideration, if the owner had reasonable grounds for believing that his title was good.

13. EVIDENCE — GOOD FAITH.— See opinion for evidence held insufficient to sustain the presumption of law that there was a lack of good faith on the part of a claimant for the value of improvements.

APPEAL from Tarrant. Tried below before the Hon. A. J. Hood.

This is a suit, filed April 25, 1882, in the district court of Tarrant county, by H. P. Stone against appellants, J. W. House and wife, Fannie W., in an action of trespass to try title to lot No. 13, in block A 2, of Daggett's addition to the city of Fort Worth, being twenty-five by one hundred feet in size, and also a prayer for rents.

The defendants filed a general and special demurrer and a general denial, and a plea suggesting possession in good faith for more than one year and having made permanent, valuable improvements on said lot in the sum of $1,150.

The case being tried by the court on September 4, 1882, judgment was rendered for the plaintiff, H. P. Stone, and against defendants, J. W. and Fannie House, for the recovery of the lot in suit and for rents at $5 per month, less $22.76, paid by defendants as taxes, and for costs; defendants excepted and gave notice of appeal, and assigned errors, and brought the case before this court for revision.

The errors assigned were that —

1st. The court erred in excluding evidence of the kind and value of improvements made on the lot, in good faith, by the defendants.

2d. The court erred in giving judgment on the evidence and upon the law applicable to the case.

*Jas. C. Scott,* for appellants.

No briefs on file for appellee.

WALKER, P. J. COM. APP.— The only questions involved in this case arise out of the effect to be given to two tax deeds conveying the property in dispute to one E. M. Daggett, under whose quitclaim deed to Mrs. Fannie W. House the defendants claim title, or, failing in that, the value of improvements made by the defendants on the lot.

The lot was sold for the unpaid state and county taxes for 1877, and for the taxes alike due and unpaid to the city of Fort Worth for the same year. The deeds were made respectively by the state and county assessor and collector of taxes, and the city collector of Fort Worth; that made by the former on May 10, 1878; that by the latter on April 6, 1878. The property was assessed against an "unknown owner," and was so sold and conveyed.

We will notice first the second ground of error, to the effect that the evidence warranted a judgment in favor of the defendants sustaining the validity of the tax titles.

In order to constitute a valid tax sale of unrendered property subject to taxation, it is essential that the proper officer shall substantially comply with section 14 of "An act to define the duties, powers, qualifications of assessors of taxes, and to regulate their compensation." Acts of 1876, p. 269; R. S., art. 4711. That section provides as follows: "If the assessor of taxes discover any real property in his county, subject to taxation, which has not been listed to him, he shall list and assess such property in the manner following, to wit: First, the name of the owner; if unknown, say "unknown." . . . Seventh, the number of lot or lots. Eighth, the number of the block. Ninth, the true and full value thereof. Tenth, the name of the city or town; and give such other description of the lot or lots, or parcels of land, as may be necessary to better describe the same, and such assessment shall be as valid as if rendered by the owner thereof."

The only evidence offered by the defendants to show an assessment

Opinion of the court.

and listing of the property in question is thus stated in the statement of facts, viz.: "The present assessor for Tarrant county produced the abstract records of his office in which the assessor assessed the property in question in a blank book, and this was the only effort at assessing said plat and property in question, in the following manner, having no words or figures other than as appears on this plat. The following is a perfect *fac simile.*"

The plat referred to consisted of a diagram on the margin of ruled columns representing a square figure divided in two parts by a perpendicular line; each of these halves being subdivided by parallel lines equidistant from each other, including in all sixteen oblong parallelograms, and each subdivision numbered from one to sixteen inclusive, respectively. Across or on the face of this figure or diagram was marked "A. 2." The diagram was doubtless intended to represent a block of lots; and "A. 2." meant "Addition" — "block number 2." The first left hand column contained the figures "1877." The three remaining columns to the right are thus represented:

| | | |
|---|---|---|
| W. J. Allen | 5 | 500 |
| E. M. Daggett | 1, 2, 3 and 4 | 200 |
| W. J. Finley | 6 | 200 |
| Jackson Galway | 7, 8 | 650 |
| J. J. Jarvis | 4 | 200 |
| D. Lewis | 12 | 250 |
| W. E. Organ | 14 | 200 |
| R. Suley | 16 | 2,000 |
| J. D. Templeton | 11 | 250 |
| Unknown | 9 | 300 |
| Unknown | 10 | 250 |
| Unknown | 13 | 250 |
| Unknown | 15 | 200 |

The schedule thus presented was probably intended to represent the owners and the unknown owners of the lots indicated by the numbers opposite their names and opposite to the word "unknown," and also the amount of value of the respective lots as assessed by the assessor of taxes; but it failed to comply with the requirements of the statute above quoted, and it does not afford such evidence of a valid assessment of the property as will support a sale of it for taxes. It contains no recitals which show that the assessor did, as such officer, make the assessment which the schedule and plat indicates he may have designed to make. The statute contemplates the performance by him of a formal, solemn act which is to constitute the basis for enforcing, if necessary for the collection of the taxes due on property, the divestiture of the owner's title to it; and

the act should clearly manifest upon its face its character and intention by appropriate recitals and statements, if its validity as an assessment is left to stand alone upon such schedule disconnected from any other evidence than its existence in a blank book in which the assessor assessed the property in question.

Whether such assessments are made by the officer and entered in books kept as records in his office or otherwise, the evidence of the act of assessment of the property must be made clearly to appear. If entered by the assessor in a blank book kept in his office, the mere use of such a book for such a purpose in no wise dispenses with the necessity of his showing in his entries that he officially and solemnly acted in the premises by a recital of the doing of all such acts as were necessary to be done in order to subject the property thus assessed by him to sale for taxes due on it.

The authority for the officer's making the assessment is that the property has not been listed to him, as declared in section 14, Acts 1876, *supra* (R. S., art. 4711), and we think the assessment made by the assessor should show, in some appropriate manner, that it was done by him in accordance with such authority, and that the assessment thus made was of property falling within the category of such that was thus subject to taxation, and had accordingly been assessed by him.

The tabular schedule in evidence failed to show that it was the result of an assessment of real property subject to taxation, made by the assessor, nor did it otherwise identify the property assessed, unless by mere inference that the diagram represented a block of lots, and that the columns represented the owners of them, with the assessor's valuation thereof. There is nothing on the face of the paper which refers the matter contained in it to any character of transaction, or which connects the various items of names and figures with any particular kind of property. Considered abstractly, by itself, it might as well refer to matters wholly disconnected with the subject of assessment of real property for unpaid taxes, or unrendered taxable property.

The statute itself establishes and prescribes the rule of certainty in respect to the identification of the property to be assessed, and requires the assessor to list and assess it in accordance therewith. This requirement contemplates a written list and assessment, and it must be sufficient to afford a basis for the further proceedings which the law contemplates may result in a sale of the property thus listed and assessed. On this branch of the subject, Burroughs in his treatise on taxation, section 96, says: "It must not be sup-

posed that because, in the class of cases we are considering, the land is proceeded against and the name of the owner is not essential, there is any less necessity for a description of the land by which it can be readily identified. There must be something more than parol proof to show that a particular tract was meant to be assessed. This may consist of a name connected with a title of some kind once existing in connection with the land, or a number, or a known designation, an adjoinder, a settlement, or some circumstance to lead to a knowledge of the land assessed. It does not help the matter to call it a proceeding *in rem*. A thing to be the subject of a legal proceeding must have some means of ascertainment. Parol evidence cannot be used to show that a tract on the list was intended for a particular tract. Titles which should rest in the breast of the officer making the levy would be of all things most transitory. The lots of land must be definitely and distinctly described, and parol proof cannot supply the deficiency in the description or boundaries. These must be ascertained from what is written. The question is not one of intention, but one of fact — what did the assessors do? Which is the specific lot on which the tax is laid? These questions must be answered from the record."

The list and assessment fails to identify with any degree of certainty the lot in question, nor does it with the required certainty indicate "the number of the lot"— nor "the number of the block"— nor "the true and full value" of the lot — nor does it indicate "the name of the city or town," nor "give such other description of the lot  .  .  .  as may be necessary to better describe the same." The instrument of writing does not contain in it anything which affords upon its face the particulars of designation as to the above named matters, which the law contemplates shall be shown.

A compliance with the requirements of the statute was one of the prerequisites of a valid sale of the property, and a non-compliance with which, and the statutes regulating sales of property for taxes, must be deemed fatal to the defendants' title.

The defendants offered to prove the kind of improvements made on the lot by the defendants, which evidence the court, on plaintiff's objections, refused to allow, on the grounds following: "That if the tax sale conveyed a title there was no necessity of proving the value of improvements, and if it did not convey title, that the defendants could not claim as innocent purchasers."

This rule erroneously assumes that good faith in making improvements is incompatible with an invalid tax title, if made under claim of ownership derived from such title. It does not appear from the

bill of exceptions what were the objections urged against the evidence, but only that it was excluded for the reasons above stated. The tax deeds to the lot are apparently regular on their faces, and it does not appear from them that the title was void; if it had so appeared, they could not have been the foundation of a claim for the value of improvements made in good faith. Hatchett v. Conner, 30 Tex., 104.

A possessor in good faith is one who not only supposes himself to be the true owner of the land, but who is ignorant that his title is contested by any person claiming a better right. Houston v. Sneed, 15 Tex., 307; Dorn v. Dunham, 24 Tex., 366. And a possessor in good faith, within the meaning of the statute, will be entitled to compensation for the permanent and valuable improvements he has made upon the land while so in possession, though it should turn out that his title is defective, or that another has the superior title. Dorn v. Dunham, *supra*. It was laid down by Chief Justice Wheeler in that case, as the principal test, that the possessor must have reasonable ground to believe that he is himself the true owner of the land. And see Sartain v. Hamilton, 12 Tex., 220; Hill v. Spear, 48 Tex., 583.

It is therefore a question of fact to be determined by the jury from all the evidence, whether the possessor claimed the land as the owner, believing himself to be such when he made the improvements, notwithstanding the invalidity in point of fact of the title under which he maintained his claim.

In this case, notwithstanding the defendants claimed under a tax title which is invalid, they were entitled to adduce evidence as to improvements under their suggestion of good faith, and to have that issue determined.

In the case of French v. Grenet, 57 Tex., 278, Justice Bonner, reviewing the decisions of our supreme court on this subject, after quoting from the cases of Sartain v. Hamilton and Hill v. Spear, *supra*, said: "It is true that there are other cases in which the general proposition has been announced that a void title will not support a claim to possession in good faith; but it is believed that they will generally be found, as in Miller v. Brownson, 50 Tex., 597, to be cases in which the invalidity of the title was clearly evident, and not those in which, to all external appearance, the title was good, and derived through the judgment of a court of general jurisdiction. Other of these cases, as Pitts v. Booth, 15 Tex., 453; Upshur v. Pace, id., 531, arose upon tax titles, a class *sui juris*, generally without meritorious consideration, which has been invariably strictly construed, and besides, were based upon the preceding case

of Robson *v.* Osborn, 13 Tex., 298, in regard to which, Chief Justice Wheeler, in Dorn *v.* Dunham, 24 Tex., 380, says that he has, since its decision, had reason to doubt its correctness, and deemed it proper to express that doubt, in order that it might not be thought to conclude the question in any case in which it might thereafter arise."

It was held in Robson *v.* Osborn, *supra,* that an invalid tax title carried no equity with it; that it was inadmissible evidence to sustain a suggestion of possession and improvements in good faith. As has been seen, that decision is now held to be of questionable authority; and in Wofford *v.* McKinna, 23 Tex., 36, it is held that the deed of an assessor and collector will support the plea of limitation of five years without proof of his authority to sell. This decision is rested upon the ground that, whether the conveyance is valid and effectual to pass the title or not, it is nevertheless ostensibly a deed — an instrument which formally undertakes to pass the title.

The defendants having accepted such a deed — one which may have been regular and apparently, on its face, a valid conveyance — one, at least, not void on its face, the defendants may have possessed the lot under it and made improvements under the belief that their title was good. Whether its invalidity as a conveyance arising out of the want of authority on the part of the assessor for failing to comply with the prerequisites of the law necessary to pass the title, or other defects in the title claimed, were of such a character as would operate to negative or destroy the defendants' claim to being possessors in good faith, would be the proper subject of determination; but the mere fact that the evidence disclosed the invalidity of the deed to convey title would not warrant the exclusion of the evidence that was offered, thereby refusing, in effect, to hear the issue as to improvements.

It was held in Hutchins *v.* Bacon, 46 Tex., 413, citing in support of the proposition Dorn *v.* Dunham, and Sartain *v.* Hamilton, *supra,* that the knowledge of the existence of a title that in fact is better than that claimed by one who, in possession of the land, makes improvements thereon, is not conclusive of the fact that the latter had not acted in good faith in making such improvements, and therefore entitled to compensation therefor.

Under such conditions as are above supposed, Chief Justice Hemphill, in Sartain *v.* Hamilton, held the doctrine that " the possessor and claimant for compensation for improvements might be a possessor in good faith, where, in judging of the validity of his title, he had

made an innocent mistake in a point of law, as in the construction of a demise, the due execution of a power, and the like."

Notwithstanding a married woman's deed without her privy acknowledgment to it is a nullity, and cannot be available to support, as color of title, the defense of the statute of limitations of three years (Berry v. Donley, 26 Tex., 737), yet a possessor of land under it is not precluded, because of such palpable defect and invalidity apparent on the face of the instrument which attempts to convey the title, from maintaining his claim to improvements. For it was held in Hill v. Spear, 48 Tex., 583, that the purchaser's knowledge of the defect was not incompatible with that good faith which would entitle him to payment for his improvements. To thus hold the law would seem to be but the application of the doctrine laid down by Chief Justice Hemphill in Sartain v. Hamilton, which in effect rests the test proper to be applied upon the proposition that whether a party acts in good faith or not is a question of fact, and that notwithstanding his mere knowledge of the existence of an adverse title superior in truth and in fact, as it may turn out, to his own, or a knowledge as to the muniments of his own title with which the law charges him, and notwithstanding he knows the contents of them, and in fact their defects are in law fatal to the validity of his title, he is nevertheless not held responsible for his innocent errors as to the legal interpretation of either the validity and superiority of the adverse title or of the inferiority of his own; that it is a question of fact to be determined, whether, notwithstanding the opportunities afforded to him to judge correctly as to the respective values of the opposing titles, he, in point of fact, did in good faith believe his own to be the true and superior title.

The application of the maxim that every man is held to know the law of the land has, of course, a qualified application, according to the nature of the subject and the circumstances of the case. See Moreland v. Atchison, 19 Tex., 303. It is clear that the application of this maxim in its full rigor to those claiming the benefits of the statute for the protection of settlers in good faith, so as to charge them conclusively with the effect of a proper legal interpretation of facts concerning their own title or the title of adverse claimants, is not recognized, but expressly disclaimed by our courts.

Mere good faith alone, however, irrespective of any considerations whatever in respect to the character of title under which a defendant claims improvements, is by no means sufficient to support such claim, as is to be observed, for instance, in the cases of Miller v. Brownson, 50 Tex., 596–7; Robson v. Osborn, 13 Tex., 298; Hatch-

ett *v.* Conner, 30 Tex., 113; the opinion in Miller *v.* Brownson remarking that, "if a purchaser will not look to the character of the title by virtue of which he enters and improves land (in that case the vendor of the land had neither possession nor claim of title to the land which he conveyed to the purchaser who claimed improvements), but will close his eyes and recklessly act on the presumption that any one who will sign a deed has a valid title, he has no one to blame but himself."

The opinion in Hatchett *v.* Conner made the following remarks on a charge given which permitted an inquiry as to the value of improvements: "This is clearly erroneous with reference to the facts of this case, as it is not pretended that the appellant has shown that either he or his vendor hold by any claim or title derived from the government. It is difficult to perceive how a party can honestly believe that his title is good, or how his possession can be in good faith, when he is unable to trace his title back to the government, the only source of title to land. While a defective or irregular apparent title may be the basis of a recovery for improvements made in good faith, a void title (if such an expression may be used) cannot be."

In the cases just quoted from, it may be deduced from the opinions in them, that where the facts known by the claimant for improvements in respect to the title under which he claimed were such that, as a matter of obvious law and right, he must know, and can leave no room for questioning the fact that he has neither a title nor the semblance of an apparent title, that the law will conclusively determine that his claim of ownership, in the nature of things, cannot be made in good faith, because it is wanting in the essential foundations on which any valid title can rest. The question as to improvements made under claim of title, in good faith, decided in the case of Stewart *v.* Kemp, 54 Tex., 251, may perhaps be said to rest on the principle above stated. In that case the title which the defendant claimed, and under which he possessed the land, was derived under proceedings which were absolute nullities; the county court having condemned the land to be sold for taxes at a special session (the law authorizing no such session to be held), as a matter of clear and obvious law, the order of condemnation was wholly void, and no subsequent proceedings of tax sale and deed in pursuance of it could derive any validity. Wanting in any valid source or authority from which the title could emanate, the claimant must be held conclusively to know that he had no title to the land.

Without derogation from or qualification of the strict rules of

law applicable to the test of the validity of tax titles, it is not questionable that they may constitute perfect assurances of title when in every respect complete, and, as has been seen, they may constitute the basis of good title under the statute of limitation independently of any judicial determination as to their validity. Thus, for some purposes and under certain circumstances, they are to be deemed colorable titles — titles not stigmatized as *per se* and presumably void. They are not necessarily "without meritorious consideration," and a tax title may be such, although in fact invalid, that its owner might well conceive, and have reasonable grounds to believe, that he held a good title to the land. It is easy to imagine the existence of such a tax title as would require the exact skill and learning of a jurist to discover in what particular its invalidity consisted.

A title that is colorably good, it would seem, would justify the honest belief of its owner that it was in fact good. In Beverly *v.* Burke, 9 Ga., 440, 443, Judge Lumpkin thus expounded the meaning of that kind of title: "What is meant by *color of title?* It may be defined to be a writing upon its face professing to pass title, but which does not do it, either from want of title in the person making it, or from the defective conveyance that is used,— a title that is imperfect, but not so obviously so that it would be apparent to one not skilled in the law."

The distinction thus made in the foregoing definition is not inapt in its application to the subject under consideration.

Without meaning to make any intimation of opinion as to the value or weight of the evidence in this case as tending to show such title under which the defendants might claim to have had adverse possession of the lot in good faith, and therefore who may have been entitled to adduce evidence in support of their claim for improvements, we deem it sufficient to say that the evidence did not present a case in which the court might determine as a matter of law that the defendants could not be heard to assert and submit to the determination of the court that they in good faith claimed to own the lot and made improvements under that belief. The tax rolls showed the assessment and valuation of the lot and block, and the statement of facts shows, by admissions of counsel and otherwise, facts tending to show regularity in all the proceedings. The authority of the officers who made the deeds is not questioned. The preliminary assessment made by the officer, which has been discussed in the early part of this opinion, was apparently an attempted compliance with the law, and although, when tested by the scrutiny of

judicial investigation, its imperfections to the legal mind may be sufficiently manifest, it is not clear but that those unskilled in legal matters may have deemed it on inspection a sufficient compliance with the law, and might have innocently supposed the tax title in that particular wholly unexceptionable.

The reasons given by the court for the exclusion of the evidence indicate that the judge trying the case (a jury being waived) was influenced by the opinion that the invalidity alone of the tax title rendered further inquiry as to improvements irrelevant and inadmissible, irrespective of whatever causes or facts induced such invalidity. The views expressed in this opinion sufficiently show that we must hold that for the erroneous opinion entertained by the court on this point, the judgment must be reversed; the defendants, under the view held by the learned judge, were precluded from having the benefit of his finding or conclusion upon the evidence on the material question as to whether, notwithstanding the invalidity of their title, they were possessors under it in good faith. Under the ruling that was made, taken in connection with the reasons assigned for making it, we are not justified in concluding that if the judge had entertained a different opinion from that which was given as to the consequences of the mere invalidity of the tax title, he would not have admitted the evidence that was offered, and held the evidence in the case sufficient to entitle the defendants to the benefit of such improvements as they may have made on the lot.

We conclude that the judgment be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion adopted December 15, 1885, Justice STAYTON not sitting.]