FAIN et al. v. NELMS et al.

(Court of Civil Appeals of Texas. Galveston.
Feb. 28, 1913. Rehearing Denied
March 27, 1913.)

1. TRESPASS TO TRY TITLE (§ 57*)—IMPROVE-
MENTS—BONA FIDE PURCHASER.

Where an agent authorized to receive ap-
plications to purchase and forward them be-
lieved he had authority to sell, and he made a
contract to sell to the purchaser, who believed
that the agent had full authority, and the pur-
chaser was placed in possession, and the owner
ratified the transaction, the purchaser was a
bona fide purchaser within the law governing
the recovery of improvements.

[Ed. Note.—For other cases, see Trespass to
Try Title, Cent. Dig. § 88; Dec. Dig. § 57.*]

2. TRESPASS TO TRY TITLE (§ 57*)—IMPROVE-
MENTS—BONA FIDE PURCHASER.

Where a competent surveyor made a sur-
vey of land purchased, but made an excusable
mistake in the boundary so as to include land
not sold, the purchaser taking possession of the
land as surveyed and making improvements
thereon could recover for the value of the im-
provements made on the land not sold.

[Ed. Note.—For other cases, see Trespass to
Try Title, Cent. Dig. § 88; Dec. Dig. § 57.*]

3. TRESPASS TO TRY TITLE (§ 59*)—IMPROVE-
MENTS—STATUTORY PROVISIONS.

In trespass to try title begun April 7,
1904, a finding that the possession of defendant
claiming compensation for improvements began
about January 1, 1903, was sufficiently definite
to fix the time within the statute providing that
the claimant must have had adverse possession
for more than a year before suit is filed to au-
thorize a recovery.

[Ed. Note.—For other cases, see Trespass to
Try Title, Cent. Dig. § 90; Dec. Dig. § 59.*]

4. TRIAL (§ 114*)—ARGUMENT OF COUNSEL.

The argument of counsel informing the
jury as to the legal effect of their finding a fact
is improper, and the court on objection must
direct the jury to disregard it.

[Ed. Note.—For other cases, see Trial, Cent.
Dig. §§ 275–278, 296; Dec. Dig. § 114.*]

5. APPEAL AND ERROR (§ 1060*)—HARMLESS
ERROR—MISCONDUCT OF COUNSEL.

Where the jury learned from the facts and
the contention of counsel during the trial the
effect of their finding a fact, the improper ar-
gument of counsel informing the jury as to the
legal effect of their finding such fact was not
reversible error.

[Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. § 4135; Dec. Dig. § 1060.*]

6. APPEAL AND ERROR (§ 1046*)—HARMLESS
ERROR—RIGHT TO OPEN AND CONCLUDE AR-
GUMENT.

Where defendant in trespass to try title
admitted plaintiff's title and demanded compen-
sation for improvements, and the real conflict
in the case was over his right to compensation,
the giving him the right to open and conclude
the argument was not reversible error.

[Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. §§ 4128–4131, 4134; Dec.
Dig. § 1046.*]

Appeal from District Court, Anderson
County; B. H. Gardner, Judge.

Action by J. A. Fain and another against
T. A. Nelms and another. From a judgment
for defendants, plaintiffs appeal. Affirmed.

See, also, 113 S. W. 1002.

W. R. Petty and Campbell & Sewell, all of
Palestine, and J. N. Starr, of Athens, for
appellants. Thos. B. Greenwood and Gregg
& Brown, all of Palestine, for appellees.

REESE, J. This is an action of trespass
to try title by J. A. Fain against T. A. Nelms
and, as presented in the trial court, involved
the title of a tract of 12 acres of land on
the Frost league adjoining an International
& Great Northern Railroad Company sur-
vey of 221 acres. Defendant, who claimed to
be the owner of a portion of said survey,
alleged that the land in controversy was part
of said tract, and also alleged that he was
in possession in good faith and as such had
made valuable and permanent improvements
on the land in controversy, and prayed that
if plaintiff recovered judgment for the land
he be allowed the value of his improvements.
On the trial defendants admitted plaintiff's
title to the land, and the case was submit-
ted to the jury on special issues, who found
in favor of defendant's right to the value of
his improvements, fixed their value and the
value of the land and the enhancement of
the value of the land by reason of the im-
provements, also awarding plaintiff $25
damages claimed by him for timber cut.
Judgment was rendered accordingly as pro-
vided by the statute. A motion for a new
trial was made by plaintiff, which was over-
ruled, and he prosecutes this appeal.

The only question presented by the appeal
is the right of defendant to recover the
value of his improvements. This is the
third trial and the second appeal of this
case, defendant having on each trial recover-
ed the value of his improvements. The first
appeal was heard and determined by the
Court of Civil Appeals of the Fourth District,
and the case is reported in 113 S. W. 1002.
On that appeal all of the contentions of de-
fendant here made were sustained, but the
judgment was reversed and cause remanded
because there was no evidence to show how
much the value of the land was enhanced by
the improvements. This suit was begun by
the filing of the original petition April 7,
1904.

Appellant requested the court to charge
the jury to return a verdict for plaintiff,
also in another requested charge, to return
a verdict for plaintiff and against defendant
on his claim for improvements in good faith.
The charges were refused, and this action
of the court is made the basis of the first
two assignments of error presented in the
brief, and the several propositions thereun-
der. Under these several propositions ap-
pellant presents the contentions that under
the undisputed evidence, first, appellee's title
to the land on the International & Great
Northern Railroad Company survey was not
such as to constitute him a possessor in good
faith, so as to entitle him to pay for the

improvements; second, that appellee's claim that he placed improvements on the land in controversy on the adjoining Frost league under a mistake as to the location of the boundary line between the International & Great Northern Railroad Company survey and the Frost league and believing in good faith that he was placing them on the land bought by him, cannot be sustained; and third, his adverse possession of the tract so improved began less than one year before the filing of this suit.

[1] Upon these issues the evidence is sufficient to support the following conclusions:

The New York & Texas Land Company was the owner of the International & Great Northern Railroad Company survey in question, which was a tract of irregular shape and joined the Frost league. In September, 1902, appellee applied to W. H. Dick, of the firm of Dick & O'Conner, land agents, at Palestine, who represented themselves to be agents of the owner for the sale of their lands in Anderson county, to purchase this tract of land. They agreed on the terms and appellee paid Dick $50 as earnest money for which Dick gave him a receipt. There is some conflict in the evidence as to whether Dick & O'Conner, at that time, were agents of the owner of the land. On the 17th of November, 1902, they were by written instrument of that date, signed by the Land Company, appointed agents, with authority to render the property for taxes, to protect land from trespassers and to receive and forward applications for the sale of land to the company, which reserved the right to reject or accept the same. Dick testified that at the time he made the contract his firm had authority to negotiate this sale, or they would not have done so, but he was in doubt as to whether they had the written appointment as agents at that time. They were reputable men, represented to Nelms that they were authorized to make the sale, they believed they had such authority, and appellee undoubtedly in good faith believed they were so authorized. A little later, in the fall of 1902, appellee applied to Dick to have the land surveyed, as he wanted to build a house as a residence on the land purchased by him. Dick, with Wilbur H. Young, an agent of the Land Company, who was a competent surveyor, went down and with appellee ran the lines of the land, so locating the dividing line between this tract and the Frost league as to place the 12.01 acres in controversy on the railroad survey. Appellee was assured that this was the correct line, and, so believing, he shortly after, and not later than the date found by the jury, "about January 1, 1903," went into possession of the land in controversy and began to make improvements inclosing some of it, planting an orchard, digging a well, and planting a crop, which was cultivated during the year 1903. He also at this time began the erection of a dwelling house, which in due course of time was completed, when he moved in and has since been making his home on the land. Afterwards it was found that appellee wanted a longer time to pay for the land than the Land Company was willing to give, and it was arranged that one Hood should buy the land, for cash, and should convey to appellee a part and to another person a part, upon such terms as appellee desired. This contract was carried out by the Land Company conveying the land to one Woodward, Woodward conveying to Hood, and Hood to appellee. In this way appellee secured title to the land. It does not satisfactorily appear why Woodward came in; but we find that he had no real interest, and that the arrangement by which appellee got title to the land was in pursuance of his original contract with Dick, and was so understood by all of the parties to the transaction. Appellee did not get his deed or written contract of sale from Hood until within a year of the filing of the suit, but we find that he was placed in possession by Dick and Young, and began his improvements as stated, on the faith of his contract with Dick. Dick in good faith believed that he was authorized to sell. Appellee in equal good faith believed that he was, and the Land Company afterwards ratified and confirmed the sale in such a way that appellee received the benefit of his contract with Dick. The lands were surveyed by a competent surveyor, and appellee in good faith believed that the 12 acres was a part of the tract which Dick, as agent of the Land Company, had contracted to sell him. It was held by the Court of Appeal of the Fourth District upon the former appeal, upon what appears from the findings of fact of that court was substantially the same evidence, that the evidence was sufficient to entitle appellee to pay for his improvements, upon all the grounds upon which his claim was contested by appellant, including appellee's mistaken belief as to the location of the line between the railroad survey and the Frost league, and his contention that his adverse possession began more than one year before the institution of this suit.

We quote the following from the opinion of the Court of Civil Appeals, on the former appeal: "The owner of the International & Great Northern survey had authorized Dick to make sales, and, at least, parties desiring to purchase its lands had reason to believe that he was so authorized. Either one of these views of the evidence was sufficient to constitute one dealing with Dick a purchaser in good faith. The receipt given by him evidenced the transaction, and was under the circumstances a writing sufficient to warrant Nelms in entertaining the belief that he had secured the land, i. e., the International & Great Northern survey. By a sur-

vey made by a surveyor who, the testimony showed, was competent and of good reputation, the 12.01 acres in question was surveyed and assigned to him as a part of that survey. That he relied upon this land being a part of his purchase, and in such belief and reliance, so induced, moved upon it, improved it, and lived upon it with his family, is supported by testimony; also, that he moved upon it more than 12 months prior to the filing of the suit. This was sufficient, as far as good faith was concerned, to support his plea, unless he should be confined in his plea to land that was in fact within the International & Great Northern survey, and was incapable under a writing calling for the International & Great Northern survey to become an improver in good faith of land situated in another survey. In Butts v. Caffall, 24 S. W. 380, this court held: 'If he (the defendant) was not negligent in ascertaining the correct boundary of the property claimed and exercised due diligence, such as a reasonably prudent and careful man would under like circumstances, to ascertain the location of his premises, and after the use of such care and diligence was mistaken as to its location, and if, while laboring under such mistake, he constructed his improvements on appellant's land, honestly believing it to be his own, he should be allowed to recover their value'—citing several cases. See, also, Gilley v. Williams (Tex. Civ. App.) 43 S. W. 1094. For the above reasons the several propositions cannot be sustained."

There can be no doubt, we think, that even if Dick & O'Conner did not, at the time they made the contract to sell to appellee, have the authority claimed by them, the circumstances were such as to induce a man of ordinary prudence to trust to their representations. Appellee undoubtedly believed they had such authority. Dick evidently, for some reason, also so believed. It was fully shown that before the survey was made Dick & O'Conner were so appointed agents, not, it is true, with full authority to sell, but with limited authority to receive applications and forward to the owners. Having this authority, at least—and it does not appear that appellee was aware that they did not have the full authority to make the contract of sale—they had the land surveyed, the surveyor being the agent of the owners and put appellee in possession. The doctrine announced in Robson v. Osborne, 13 Tex. 307, that in such case appellee must, at his peril, ascertain whether the agent was authorized, was practically overruled in Dorn v. Dunham, 24 Tex. 378, by the same judge who wrote the opinion in Robson v. Osborne, and is not in harmony with the rule now established in this state. House v. Stone, 64 Tex. 684; McDaniel v. Needham, 61 Tex. 274; French v. Grenet, 57 Tex. 279; Van Zandt v. Brantley, 16 Tex. Civ. App. 420, 42 S. W. 617; West Lumber Co. v. Chessher, 146 S. W. 979.

[2] If the circumstances were such as to protect appellee in the value of his improvements, if he had placed them on the land purchased, the same equitable principle would protect him in the present case; the improvements having been placed on the adjoining land under the excusable belief, in good faith, on the part of appellee, that it was within the boundaries of the railroad survey. Butts v. Caffall, 24 S. W. 373, and authorities cited. We think it entirely clear that any man of ordinary care and prudence in looking after his own interests would have been misled as appellee was and would have relied upon a survey made by a trustworthy surveyor as to the location of the lines. The evidence shows that the mistake as to the boundary was especially excusable. It was shown that Homeyer, a surveyor of 15 or 20 years' experience, and a most competent surveyor, also ran this division line after Young did and his location of its corresponded substantially with that of Young.

[3] It is strenuously contended by appellant that at least the great preponderance of the evidence shows that appellee's adverse possession began less than a year before the institution of the suit. The evidence on this part was conflicting, but there was positive and emphatic testimony that appellee took possession and at least began to improve within a very short time after the survey by Dick and Young, which was shown clearly to have been in the fall of 1902. If the testimony referred to is true, appellee's possession began certainly some months prior to April 7, 1903. The suit was filed April 7, 1904. The jury found that it began "about January 1, 1903," which was definite enough to fix the time at some date more than a year before the suit was filed, and the evidence is sufficient to sustain the finding. The statute does not require that the improvements shall have been made more than a year before suit is filed, but that the claimant should "have had adverse possession in good faith of the premises in controversy for at least one year next before the commencement of such suit, and that he has made permanent and valuable improvements on the land sued for during the time of such possession."

The fifth proposition under these two assignments is hardly germane to the assignments, but we have carefully considered it and find it without merit. The assignments and the several propositions are severally overruled.

The contention presented by appellant in the third assignment of error with regard to the admission in evidence of certain letters offered by appellee over his objection was decided adversely to appellant on the former appeal, the court holding that the letters were admissible upon the issue of good faith, in which we concur, and overrule the assignment.

What we have said renders any further discussion of the fourteenth and fifteenth as-

signments of error unnecessary, and they are overruled, with the several propositions stated.

[4] By the ninth assignment of error appellant complains of statements made by appellee in the closing argument, in which the jury were instructed as to the legal effect of their finding as to the date of the beginning of appellee's adverse possession. Objection was made by appellant to this line of argument, which the court overruled, and further refused to instruct the jury, at appellant's request, to disregard it. We have no hesitation in saying that the argument was, in the circumstances, improper, and that the court should have stopped it when attention was called to it, and should have instructed the jury to disregard it. The jury, as triers of the facts solely, had nothing to do with the legal effect of their findings. This was a matter which could not properly concern them. They were only to find the facts. The argument came very near a direct invitation to the jury to consider, in finding this fact, what the legal effect would be. The argument should not have been made, nor should the court have allowed it to be made, and to give tacit approval of it by disregarding appellant's objection.

[5] In passing upon the question, however, as ground for reversal, its effect on the jury must be considered, and upon this point it must be assumed that during the course of this trial, amid the strenuous conflict between counsel as to the time appellee's adverse possession began, and the amount of evidence on that issue, it must have been a remarkably stupid juror who would not have gathered what would be the legal result of a finding on this issue. We are inclined to the opinion that counsel only told the jury what they already knew, and we cannot believe that they disregarded the evidence and charge of the court, and were influenced by this argument. These improper remarks, we think, ought not to bring upon appellee the penalty of a reversal. The assignment is overruled.

[6] Appellee admitted appellant's title and took the burden of establishing his claim to improvements in good faith and was given the right to open and conclude the argument. To this appellant objected on the ground that appellee had not admitted his right to recover rents and damages claimed in the petition. There appears to have been no contest of appellant's right to recover damages for cutting of timber, nor of the amount awarded by the jury, $25. No evidence was introduced as to rents, and the issue was not submitted, nor did appellant request it to be submitted. Neither in the motion for a new trial nor by any assignment of error is any objection made to the verdict as to the value of the timber. This was such an immaterial issue, in view of all the facts and circumstances, that we are of the opinion that it was not reversible error for the court to allow appellee to open and conclude the argument, on his admission of appellant's title. The only real conflict was over appellee's right to pay for his improvements. Upon this he took the affirmative and the burden of proof. Under the same state of facts the Court of Civil Appeals, on the former appeal, held that the trial court did not err in allowing appellee to open and conclude the argument, and in this holding, on the present appeal, we concur.

We have carefully considered each of the assignments of error and the several propositions thereunder presented in the able and exhaustive brief of counsel for appellant, and our conclusion is that none of them present reversible error. The judgment is therefore affirmed.

Affirmed.