## OLIVER KEENAN v. C. C. SLAUGHTER.

### Decided February 8, 1908.

**1.—Public Land—Patent—Presumption in Favor of.**

In a suit of trespass to try title, the contention being that the land covered by a patent had been reserved by the State from location and appropriation by private parties at the inception of the patentee's rights and that therefore the patent was void, evidence considered, and held sufficient to support a finding that the land covered by the patent had been legally segregated from the public domain and appropriated by the patentee, notwithstanding certain irregularities in the process, prior to the taking effect of the Acts of the Legislature reserving from location the land covered by the patent, and hence that the patent was valid as against one not claiming under said Acts. The Commissioner of the Land Office having passed on the facts a presumption will be indulged in favor of his official act in issuing the patent.

**2.—Tax Sale by Comptroller—Prerequisites.**

Where the defendant in a suit of trespass to try title claimed the land in controversy under a tax sale made by the State Comptroller, and the evidence failed to show affirmatively that the Comptroller, upon receipt of the tax roll of the unorganized county in which the land in controversy was situated, compared the lands rendered for taxation to the county assessor with those rendered to him by non-residents before making his delinquent lists and valuing the land, or that the sale made by the Comptroller was in front of the Comptroller's office in the city of Austin, within the hours prescribed by law, judgment was properly rendered against the defendant. The particulars mentioned above are prerequisites to a valid sale by the Comptroller, and the recitations in the Comptroller's deed are not sufficient to establish said facts.

**3.—Same—Statute Construed.**

Articles 4266 and 5147 of the Revised Statutes are not to be construed as making unnecessary a valid, legal sale by the Comptroller. Said articles must be held as having reference to regular sales and not intended as declaring a penalty.

Appeal from the District Court of Hale County. Tried below before Hon. L. S. Kinder.

*C. S. Williams,* for appellant.—Where there has been no file, application or entry made to cover land and there has never been any survey of the land made on the ground, the land is not appropriated until the field notes are approved by the Commissioner of the General Land Office. 2 Texas Civ. App., 711; 84 Texas, 284.

A location upon land which is reserved from such location is absolutely void and the patent issued thereon is void. Act of February 20, 1879, Acts 1879, page 9; Act of July 14, 1879 (the 50 cent

Act); Gammage v. Powell, 61 Texas, 629; Snyder v. Compton, 87 Texas, 376; 22 Texas, 84; 82 Texas, 415; 61 Texas, 87; Constitution of Texas, art. 14, sec. 2.

A tax deed executed by the Comptroller of Public Accounts of the State of Texas, in proper form, purporting to convey land, situated in an unorganized county, sold for taxes, is sufficient evidence of title in the grantee, which can be attacked only by proof of actual fraud. Constitution of Texas, art. 8, sec. 13; Revised Statutes of Texas, 1895, art. 5150; Pillow v. Roberts, 13 Howard, 473, s. c. 14 Law. ed., 229; Thomas v. Lawson, 21 Howard, 331, s. c. 16 Law. ed., 83; Keely v. Sanders, 99 U. S., 441, s. c. 25 Law. ed., 328; DeTreville v. Smalls, 98 U. S., 517, s. c. 25 Law. ed., 174; Meredith v. Coker, 65 Texas, 29; Eustis v. City of Henrietta, 90 Texas, 474; Black on Tax Titles, sec. 448; Hardie v. Chrisman, 60 Miss., 671; Parker v. Overman, 18 Howard, 137, s. c. 15 Law. ed., 318.

Land lying in an unorganized county, bid in by the Comptroller for the State, at a sale by him for taxes, and which is not redeemed within two years from the sale, becomes vacant and reverts to the public school fund, and the original owner's title is forfeited, and one purchasing such land as school land procures a perfect title. Constitution of Texas, art. 8, sec. 13; Revised Statutes of Texas, arts. 4266, 5147; State v. Sponaugle, 43 L. R. A., 730; King v. Mullins, 171 U. S., 406, s. c. 43 Law. ed., 215.

*Wilson, Dalton & Wilson, G. G. Wright* and *K. R. Craig,* for appellee.

CONNER, CHIEF JUSTICE.—Appellee on the 20th of February, 1906, instituted this suit against appellant in the usual form of trespass to try title to recover a section of land described in his petition. Appellant pleaded the general denial, not guilty, improvements in good faith, and in cross-claim asserted title to the land in controversy in the form of trespass to try title. The trial, which was before the court without the intervention of a jury, resulted in a judgment for appellee for the land in controversy, and in favor of appellant on his plea of improvements in good faith.

Appellee proved a regular chain of transfers from James A. Dickenson, the grantee in the patent, to himself.

The defenses sought to be established by appellant, so far as necessary to state, were: First, that the patent to James A. Dickenson was void; second, that the land was duly sold to the State of Texas for taxes, placed upon the market by the Land Commissioner, and sold to appellant as public free school land.

Under appellant's first, second and third assignments of error it is contended that the patent under which appellee claims was void on the ground that the land in controversy is wholly within Lamb County and was reserved from location by an Act of the Legislature approved February 20, 1879, providing for the survey and sale of unappropriated public domain for the erection of a new State capitol, etc. (see laws 1879, regular session, page 79), or by Act of the Legislature at its special session approved July 14,

1879 (see special laws referred to, page 48). The first Act cited reserved from location the unappropriated public domain in certain counties, including Lamb, and the second Act made like reservation in counties therein named, including Hale. It seems undisputed, however, that I. J. Summerfield, a deputy surveyor of Jack Land District, which included Lamb County, located the certificate by virtue of which the land in controversy was patented on January 7, 1879, he so certifying in the copy of field notes offered in evidence upon the trial. I. W. Calloway, district surveyor of Jack District, certified that he had examined the plat and field notes made by Summerfield and found them correct, and that they were recorded in his office, though the precise date of such record is not shown. Nor was it made to affirmatively appear that there was any formal application to file upon, or entry made of the certificate on land, either in Hale or Lamb Counties, and it further appears that Summerfield made the location for the owners, probably by platting the land among other surveys on the maps of Lamb County. It can not be doubted, however, that the field notes were made out, certified and approved, as stated, by the district surveyor, recorded and returned to the General Land Office, and that the Commissioner of the Land Office by virtue thereof issued a patent to James A. Dickenson, describing the land as described in the Summerfield notes, save that the land was described as in Hale County instead of in Lamb County, it appearing that the word *Lamb* had been erased and the word *Hale* substituted in the field notes on file in the General Land Office.

We can not think the irregularities noted, if such they are, had the effect of making the patent under which appellee claims void, as contended by appellant. It is true that the effect of the Act approved February 20, 1879, was to withdraw from location lands not theretofore otherwise legally segregated and appropriated, but if it be assumed that the land in controversy is in fact situated in Lamb County, as recited in the Summerfield field notes, it nevertheless, we think, was so appropriated by the previous survey of January 7, followed by the approval of the field notes and issuance of the patent, as to take the land in controversy out of the operation of the reservation referred to. It was the duty of the Commissioner of the General Land Office to determine whether, prior to the taking effect of the reservation, the holder of a certificate had taken such steps toward the appropriation of the land to his certificate as would entitle him to perfect his title as against the reservation. The presumption which the law indulges in favor of the correctness of an official act is sufficient to support the conclusion that the certificate owner had placed himself in such position that his right to the land was superior to the reservation, and that the Commissioner properly did that which the court would have required him to do.

Besides, the record is not conclusive that the land is in Lamb County. True, the field notes as made out by Summerfield and approved by the district surveyor so recite, and one witness on the trial so testified; but Summerfield testified on the trial, and it

substantially appears therefrom, that the survey in controversy was platted in and attached to a long base line, originating in Deaf Smith County, and that the witness testifying to the location of the land in controversy in Lamb County had never surveyed the line between Lamb and Hale Counties, but said that "the common understanding of the people who reside in that community, and the common report is that the county line is located as stated by me." The Commissioner of the Land Office, however, as before shown, erased the word *Lamb* in the field notes and asserted the word *Hale* and patented the land as located in Hale County, and it must not be assumed that the Commissioner made the correction indicated without evidence before him; at least a mistake in this particular ought not to invalidate the patent, particularly in view of the fact that the State is not complaining and that appellant asserts no right under the Act of the Legislature creating the reservation. These considerations also apply, we think, to the Act of July 14, 1879, if the land is in fact located in Hale County. So that as against appellant, at least, neither reservation affects appellee's title.

The only remaining material question is whether the Comptroller of Public Accounts lawfully sold to the State the land in controversy for the State and county taxes for the year 1894. If he did so, then by virtue of articles 4266 and 5147 of the Revised Statutes the land reverted to and became a part of the public free school fund and as such subject to sale, in which event it is not disputed that appellant regularly became the purchaser and would be entitled to a recovery, appellee having failed to redeem his land from such sale. We are of opinion, however, that no such sale by the Comptroller was made as will have the effect contended for. It appears from the certificate of J. W. Stephens, Comptroller of Public Accounts, that on July 24, 1895, the then Comptroller, R. W. Finley, levied upon all lands situated in unorganized counties for the unpaid taxes of the year 1894 and regularly advertised said lands for sale; that pursuant to such levy and advertisement he, on October 1, 1895, sold the section of land in controversy to the State of Texas. The certificates of the Comptroller and evidence, however, fail to show that the Comptroller, upon receipt of the tax rolls of Castro County, to which the then unorganized county of Lamb was attached, compared the lands rendered to the assessor of Castro County with those previously rendered to him (the Comptroller) by nonresidents, before making out his delinquent list and placing such value upon the lands as he deemed just and fair, as provided by article 5141 of the Revised Statutes. Nor does such evidence show that the sale was made by the Comptroller "in front of the Comptroller's office in the city of Austin between the hours of eight o'clock a. m. and four o'clock p. m." of the day of sale, as commanded by Revised Statutes, article 5145. We think these were prerequisites of power in the Comptroller and hence of a valid sale by him. We know of no exception to the rule that before property of a citizen can be divested out of him by virtue of a tax sale, the steps prescribed by the law must be at least substantially complied with.

The power was not given to the Comptroller to assess land in unorganized counties until after he had received the tax rolls of the county to which the unorganized county was attached and until he had afterwards compared the lands which had been rendered to the assessor of the parent county with the list of lands previously rendered to him (the Comptroller) by nonresidents, after which it was his duty to value the lands thus found to be unrendered and three months thereafter to levy upon and make advertisement as provided by law. Revised Statutes, articles 5141 and 5144. It can not be said that these directions are immaterial. They were evidently prescribed as conducive to certainty and as tending to protect owners of land who may have, as authorized by law, rendered their lands and paid taxes thereon to the collector of the county to which the unorganized county was attached, and those theretofore having rendered or paid the taxes to the Comptroller. Nor can it be said that the time and place prescribed by the statute (article 5145) are immaterial. The Comptroller acted alone under the authority given by law. He was a mere instrument in the passage of title, and his authority must be strictly construed and every prerequisite fulfilled. Davis v. Farnes, 26 Texas, 297; Morrison v. Loftin, 44 Texas, 23, and cases cited Book 2, Texas Notes, 659. We think we need not cite authorities in answer to the proposition that the recitations in the Comptroller's deed are sufficient to establish the performance of the prerequisites of the tax sale. The power of the officer must first be shown before we can indulge the presumption of the regularity of his acts.

Appellant has filed a written argument in which it is insisted, in effect, that by virtue of articles 4266 and 5147 of the Revised Statutes appellee's title was devested by the mere fact of the sale by the Comptroller. The contention is that "it is not a question of a valid, legal sale for taxes; the statute doesn't refer to the proceedings at all; but reads 'when lands—bid in by the Comptroller for the State—are not redeemed, then the land shall become vacant,'" etc. We do not agree with such construction of the articles relied upon. They are to be construed with other articles of the statute relating to an owner's failure to pay the taxes, and must be held as having reference to regular sales and not intended as declaring a penalty.

We conclude that none of appellant's contentions can be sustained, that all assignments should be overruled, and that the judgment must be affirmed.

*Affirmed.*