## J. B. LEWRIGHT ET UX. V. E. WALLS.

### Decided May 12, 1909.

**1.—Evidence—Power of Attorney.**

Where a devisee of land, who was also sole independent executrix under the will, executed a power of attorney to sell the land for herself and as such executrix, under which the land was sold for her in her own right, the power was admissible in evidence over objection that she as executrix could not delegate her power.

**2.—Same—Objection to Evidence—Practice.**

An objection to evidence not made in the court below can not be considered on appeal, for the obvious reason that it might have been met and overcome on the trial if made there.

**3.—Same—Attorney in Fact—Identify—Deed.**

Where the power to sell land was to "Aldace W. Caswell," and a deed was executed in the name of the donor by "A. W. Caswell, attorney in fact," in the

TEXAS CIVIL APPEALS REPORTS, VOL. 55.     [May,

absence of evidence to the contrary it was sufficiently apparent that the deed was made by the donee of the power to admit said deed in evidence.

**4.—Evidence—Public Records—Agreement—Statement of Contests.**

Where it was agreed on a trial that the deposition of the Commissioner of the General Land Office might be taken in lieu of record evidence whereby it might be shown that the sale from the State to B. H. Hopper was in good standing in the Land Office Department of Texas in J. B. Puryear, the testimony of the Commissioner of the Land Office as to the contents of a paper, document or record in the General Land Office furnished by the Comptroller relating to such sale and transfers, was admissible over objection that it was not the best evidence.

**5.—Sale of Land for Taxes—Validity—Burden of Proof.**

As a general rule the party claiming lands under a sale for taxes must show affirmatively that the law under which the sale was made had been substantially complied with, not only in the sale itself, but in all the anterior proceedings.

**6.—Same.**

To the validity of any sale of land for taxes, it is imperatively necessary that the land shall have been subject to taxation; that it shall have been actually assessed for taxation and a tax levied, and that, as to the official proceedings leading up to a sale, there should be at least prima facie evidence of substantial compliance with the provisions of the law on the subject.

**7.—Same—Sale to State.**

One claiming under a tax sale made to the State must show that the law was substantially complied with just as one claiming under such a sale to an individual would have to do.

**8.—Trespass to Try Title—Tax Title—Outstanding Title.**

Where, in trespass to try title, the plaintiff showed a complete chain of title from the sovereignty beginning with patent issued in 1879, evidence that the Comptroller sold the land for taxes for the year 1892 and bid it in for the State; that in accordance with law, thereafter the land was classified, appraised and placed on the market for sale as school land; that it was purchased as such, and that under transfers from the purchaser and others the defendant had acquired the right under such purchase which was in good standing, neither showed superior title in defendant nor an outstanding title.

Appeal from the District Court of Dawson County. Tried below before Hon. James L. Shepherd.

*Morrison & Morrison,* for appellants.

*J. S. Crumpton* and *L. A. Dale,* for appellee.

NEILL, ASSOCIATE JUSTICE.—The appellants, J. B. Lewright and his wife, Carrie H. Lewright, sued the appellee, E. Walls, in trespass to try title to recover survey No. 9 in block No. 34, township 6 north in Dawson County, Texas, patented to Walter A. Huffman, assignee of Georgetown Railroad Company, containing six hundred and forty acres. The defendant answered by a plea of not guilty and by making his grantor, W. P. Dickenson, a party defendant, against whom he prayed judgment on his warranty in the event of plaintiff's recovery. The trial, which was by the court without a jury, resulted in a judgment for the original defendant, from which necessarily followed a judgment in favor of Dickenson, his alleged warrantor.

The plaintiffs exhibited in evidence a chain of title which is as

follows: (1) Patent issued by the State on December 20, 1879, to W. A. Huffman, assignee; (2) the will of Walter A. Huffman, deceased, duly probated, devising the land in controversy to his wife, Sallie Huffman, who was appointed and qualified as independent executrix of the testator's estate under the will; (3) power of attorney made January 11, 1892, by Sallie Huffman for herself and as sole and independent executrix of the estate of Walter A. Huffman, deceased, to Aldace W. Caswell, empowering him to sell and convey either in her name or in her name as executrix of said estate any property thereof, which includes that in controversy; (4) deed from Sallie Huffman to Carrie Huffman Lewright, dated January 13, 1894, signed "Sallie Huffman by A. W. Caswell, her attorney in fact," conveying the land in controversy.

This is apparently a complete chain of title from the sovereignty to Mrs. Lewright, and, if all the links in the chain were admissible, would entitle plaintiffs to a recovery, unless the defendant showed title in himself or a superior outstanding title. But it is contended by the defendant in a cross-assignment of error that the trial court erred in admitting in evidence the power of attorney from Sallie Huffman for herself and as executrix of the estate of W. A. Huffman, deceased, to Aldace W. Caswell, for the reason that she could not as independent executrix delegate to another her discretionary power under the will to sell the property of the estate of her testator. If she were not, as the residuary devisee, the owner of the property, and had not by the power authorized her attorney in fact to sell it for her in her own right as well as for her as executrix of the estate, the objection would seem tenable. But as it is, there is nothing in it, for she clearly could vest him with the power to sell it for her in her own right which the deed made by virtue of the power to Mrs. Lewright shows was done. The defendant also contends under his second cross-assignment of error that the court erred in admitting in evidence the deed from Sallie Huffman to Carrie Huffman Lewright, signed by "Sallie Huffman, by A. W. Caswell, her attorney in fact," for the reason that in the absence of evidence that Aldace W. Caswell and A. W. Caswell are one and the same person, the deed would not convey the property. It will be observed that this objection was not made before the trial court to the introduction of the deed. The rule is that an objection to evidence not made in the court below can not be considered on appeal, for the obvious reason that it might have been met and overcome on the trial if made there. To illustrate: If the objection now urged had been made in the trial court, plaintiffs might have overcome it by proving that Aldace W. Caswell and A. W. Caswell is one and the same person. See Kesterson v. Bailey, 35 Texas Civ. App., 235. We think, however, in the absence of anything to the contrary, this is sufficiently apparent. (Kane v. Sholars, 41 Texas Civ. App., 154; Mosley v. Reily, 28 S. W., 895.)

The question then is, Did the defendant show title in himself or an outstanding title superior to plaintiffs? This agreement appears in the statement of facts: "It is agreed on the part of the plaintiff that the deposition testimony of the witness John J. Terrell, Commissioner of the General Land Office, be taken in lieu of record testimony in that

it states sale from the State to B. H. Hopper, and other transfers from B. H. Hopper down to J. B. Puryear, and that the sale made to Hopper as a school-land purchase is shown to be in good standing in the Land Department of Texas in J. B. Puryear."

After this defendant read in evidence the deposition of John J. Terrell, Commissioner of the General Land Office, which is as follows:

"The records of the General Land Office show that section 9, block 34, township 6 north, on the waters of the Colorado River, about 13 miles north, 42° E. from the center of Dawson County, was surveyed according to field notes on file May 24, 1879, and patented to W. A. Huffman, assignee of the Georgetown Railroad Company, December 20, 1879, patent No. 37, volume 51. The records of the General Land Office further show that said section of land was classified as dry grazing and appraised at $2 per acre, and placed on the market for sale by the Commissioner of the General Land Office as Public Free School Land October 8, 1903, under articles 4266 and 5147 of the Revised Statutes of 1895, and said section of land was sold as Public Free School Land to B. H. Hopper as an actual settler on his application to purchase the same dated October 10, 1903, made under the provisions of Title LXXXVII, chapter 12A, Revised Civil Statutes of 1895, and amendments thereto by Act of May 19, 1897, and the provisions of an Act relating to the sale and lease of Public Free School and Asylum Lands, and to repeal all laws and parts of laws in conflict therewith, approved April 19, 1901, which application was filed in the General Land Office October 26, 1903, and the land awarded to B. H. Hopper October 27, 1903. The records further show that said section was conveyed by transfers on file in said office from B. H. Hopper to W. R. Maxwell, April 7, 1904; from W. R. Maxwell to J. H. Black January 19, 1905, and from J. H. Black to J. B. Puryear August 23, 1905, and stands on the records of said Land Office in the name of the latter as assignee. I have been Commissioner of the General Land Office since January 10, 1903. The certificate, field notes and transfer from the Georgetown Railway Company of said certificate to W. A. Huffman were filed in the General Land Office October 23, 1879, long before I became connected with said office. The land was classified, appraised and placed on the market after I became Commissioner of said office, and all of the papers pertaining to the sale of said land to B. Hopper, as well as the transfers thereof down to J. B. Puryear, were filed in said office during my encumbency thereof. The records of the General Land Office show that Dawson County was an unorganized county in the year 1902, but, as far as I am able to find, the records do not show the date when said county was organized. The lands, as far as the records of the General Land Office show, had no classification and appraisement in 1902 or previous to the date it was classified and appraised, October 8, 1903. As stated in my answer to direct interrogatory number 2, said section of land was patented to W. A. Huffman, assignee, December 20, 1879. This patent has not been canceled. This section of land was embraced in a statement furnished this office by the State Comptroller on July 13, 1903, of lands in unorganized counties bid in by the Comptroller for the State for taxes, and which had not been redeemed, said state-

ment showing that this section was sold for nonpayment of taxes for the year 1892. Acting by authority under articles 4266 and 5147, Revised Statutes of 1895, and in accordance with an opinion of the Attorney-General to this office September 19, 1903, this section of land was classified, appraised, placed on the market and sold as Public Free School Land.

"The sale to B. H. Hopper of said section, as far as shown by the records of the General Land Office, is the only sale by the State thereof, and which sale, as heretofore stated, now stands on the records of said office in the name of J. B. Puryear, assignee, and which sale does not appear to have ever been canceled. The statement from the State Comptroller referred to in my answer to interrogatory number 6, as already stated, shows that this section 9 was sold for nonpayment of taxes for the year 1892. The remainder of this interrogatory can not be answered by me or from data in the General Land Office since there is no such data in said office. The data referred to in this interrogatory I presume (eighth interrogatory) is in the possession of the State Comptroller, in whose department all records of tax matters are kept. On October 26, 1903, the classification of said land was dry grazing and the appraisement $2 per acre, and, as far as the records of the General Land Office show, no change of classification and appraisement of said land has been made since said date."

Cross-examination.—"I have attached no copies to the direct interrogatories. All of my statements are based on records of the General Land Office as far as they refer to the section of land in question."

Defendant then introduced in evidence, (1) a general warranty deed dated June 21, 1907, from Florence M. Puryear and others, which recites that the grantors are all the heirs of J. B. Puryear, deceased, conveying the land in controversy to W. P. Dickenson; (2) a special warranty deed dated August 13, 1906, made by W. P. Dickenson and his wife, Mattie, to the defendant E. Walls, conveying the land in controversy. It was proved that the grantors in the first of these two deeds were the heirs of J. B. Puryear.

So much of this testimony as undertakes to say what was embraced in the statement furnished the General Land Office by the State Comptroller was objected to upon the grounds that the original statement, if it can be furnished, but if not, a true and correct copy thereof certified to under the hand and seal of the Commissioner of the General Land Office, is the best evidence; and that, therefore, the testimony of the Commissioner as to what facts are shown by such statement is inadmissible.

The admission of such testimony over the objections is the subject of the plaintiffs' first and second assignments of error. If, as it would seem from Mr. Terrell's testimony, the statement of the Comptroller was "a paper, document or record" in the General Land Office, then either a certified copy as provided for in article 2308, Revised Statutes of 1895, or an examined copy proved as at common law, would be the best evidence, and a statement of its contents or what is shown by such paper or record would be in the nature of hearsay testimony and inadmissible. But it is contended by the defendant that such testimony was by reason of the agreement of plaintiffs above copied, made

on the trial, admissible. Under such agreement such testimony was certainly admissible "to be taken in lieu of record testimony of the sale from the State to B. H. Hopper and other transfers down to J. B. Puryear, and that the sale made to Hopper as school purchase is shown to be in good standing in the Land Department of Texas, in J. B. Puryear." No other construction can be placed upon the agreement.

We recur now to the question stated, or, to change its form, Does the testimony of defendant above recited (for that is all upon the subject) show title in defendant or an outstanding title superior to that shown by plaintiffs? This depends upon whether plaintiffs' title to the land was divested by the tax sale made by the Comptroller to the State; for if it was not so divested the State had no title to convey to Hopper under whom the defendant claims. The contention of plaintiffs under the fourth and fifth assignments is that there is an absence of any evidence showing a divestiture of their title; and that, therefore, the trial. court erred in rendering judgment for defendant and in not rendering judgment in their favor for the land in controversy.

To the validity of any sale of land for taxes, it is imperatively necessary that the land shall have been subject to taxation; that it shall have been actually assessed for taxation and a land tax levied, and that, as to the official proceedings leading up to a sale, there should be at least *prima facie* evidence of substantial compliance with the provisions of law on the subject; and as a general rule it may be said that the party claiming lands under a sale for taxes must show affirmatively that the law under which the sale was made has been substantially complied with, not only in the sale itself, but in all the anterior proceedings. (Yenda v. Wheeler, 9 Texas, 417; Robson v. Osborn, 13 Texas, 307; Devine v. McCulloch, 15 Texas, 491; Kelly v. Medlin, 26 Texas, 48; McDaniel v. Meedham, 61 Texas, 274; Terrell v. Martin, 64 Texas, 125; Clayton v. Rehm, 67 Texas, 52; Dawson v. Ward, 71 Texas, 72; Houston v. Washington, 16 Texas Civ. App., 504; Lamberida v. Barnum, 90 S. W., 698; Keenan v. Slaughter, 108 S. W., 703; 2 Cooley on Taxation (3d ed.), 916.)

Taking all the evidence, including the testimony of Mr. Terrell, as true, it fails to show that the sale of the land in question by the Comptroller to the State for taxes was made under authority and in compliance with the law. A presumption of the validity of a tax sale can no more be indulged where the State is the purchaser than it can at one where the property is purchased by an individual. One claiming under a tax sale made to the State must show that the law was substantially complied with just as one claiming under such a sale to an individual would have to do.

Therefore, it was the duty of the trial court to have rendered judgment in favor of plaintiffs against defendant for the land in controversy; and it becomes our duty, under article 1027 Revised Statutes, to reverse its judgment and render such judgment here. (Maverick v. Routh, 7 Texas Civ. App., 675; Blakemore v. Jones, 5 Texas Civ. App., 521; Anderson v. Walker, 70 S. W., 1004; Adoue v. Tankersley, 28 S. W., 346; Baggett v. Sheppard, 110 S. W., 952.)

The judgment of the District Court in favor of defendant against plaintiffs is reversed and judgment is here rendered in favor of the plaintiffs against the defendant E. Walls for the land in controversy, without prejudice to the defendant to pursue his action, if any he has, against his vendor, Dickenson, for a breach of warranty.

*Reversed and rendered.*