SAN ANTONIO, U. & G. R. CO. v. DAWSON. (No. 5945.)

(Court of Civil Appeals of Texas. San Antonio. Jan. 30, 1918. On Motion for Rehearing, March 6, 1918.)

1. MASTER AND SERVANT ☞263 — ACTIONS FOR INJURIES — PLEADING — SUPPLEMENTAL PETITION.

In a railway conductor's action for injuries, in which the answer denied that plaintiff was in defendant's employ at the time of the injury, and alleged that he was employed by and working for F., an independent contractor engaged in constructing defendant's road, an allegation in the supplemental petition that F. was defendant's president was not irrelevant.

2. APPEAL AND ERROR ☞1170(3)—HARMLESS ERROR—OVERRULING EXCEPTIONS.

Though allegations of the supplemental petition concerning defendant's liability in the event that plaintiff was at the time of his injury in the service of an independent contractor were mere conclusions and not statements of facts, the overruling of an exception was not reversible error under rule 62a (149 S. W. x), providing that no judgment shall be reversed and a new trial ordered for errors at the trial unless the appellate court shall be of the opinion that the error was such a denial of appellant's rights as was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment, where the jury found upon sufficient evidence that plaintiff was in defendant's service.

3. TRIAL ☞350(6) — SPECIAL ISSUES — ACTIONS FOR PERSONAL INJURIES.

Where defendant introduced testimony tending to prove that plaintiff worked intermittently for it and for F., a special issue as to whether plaintiff at the time he was injured was engaged in doing any service for defendant was material to the contention insisted upon by defendant as material.

4. TRIAL ☞350(6), 351(5)—SPECIAL ISSUES— ACTIONS FOR PERSONAL INJURIES — ISSUES ALREADY SUBMITTED.

A special issue as to whether plaintiff was in defendant's employ when the injury occurred was properly submitted, and while the court might have submitted the issue in that form, or in the form requested, as to whether he was in the contractor's employ when injured, having submitted it in one form it was not error to refuse to submit it in the requested form.

5. TRIAL ☞350(1) — SPECIAL ISSUES — QUESTIONS TO BE SUBMITTED.

The rule in cases submitted by a general charge that each group of facts pleaded and supported by testimony should be affirmatively submitted to the jury does not apply when the case is submitted upon special issues.

6. TRIAL ☞350(6) — SPECIAL ISSUES — ACTIONS FOR PERSONAL INJURIES.

A special issue as to whether plaintiff at the time he was injured was engaged in the discharge of his duties as defendant's employé was not objectionable as submitting a question of law.

7. TRIAL ☞350(6) — SPECIAL ISSUES — ACTIONS FOR PERSONAL INJURIES—"QUESTION OF FACT."

A special issue as to whether a box car which plaintiff was boarding when a brake wheel gave way and permitted him to fall belonged to defendant at the time of the injury submitted a question of fact, and not one of law, within Vernon's Sayles' Ann. Civ. St. 1914, art. 1985, providing that the special verdict must find the facts established by the evidence.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Question of Fact.]

8. TRIAL ☞351(5) — SPECIAL ISSUES — REQUESTS—ISSUES—ALREADY SUBMITTED.

Where the court submitted a special issue as to whether the car belonged to defendant at the time of the injury, it was not error to refuse to submit an issue as to whether it belonged to an independent contractor at such time.

9. TRIAL ☞352(5)—SPECIAL ISSUES—FORM— "SIMPLE SENTENCE."

A special issue as to whether at the time of the injury such car was being moved by defendant in the operation of its railroad or in work incidental to such operation was not objectionable as submitting two issues in.one requiring two answers, as the sentence was a "simple sentence," under the rules of syntax, in which only one principal statement was made, but with adverbial phrases modifying the predi-

cate, while, in order to be subject to the objection made, the sentence must be a compound sentence composed of two co-ordinate clauses.

**10. MASTER AND SERVANT ☜284(1) — ACTIONS FOR INJURIES—QUESTIONS FOR JURY.**

In a railway conductor's action for injuries, a peremptory instruction requested by defendant was properly refused if there was any evidence that plaintiff was an employé of defendant at the time of his injury, and was at that time performing the duties of his employment, and that defendant's negligence proximately caused his injuries.

**11. MASTER AND SERVANT ☜277—SUFFICIENCY OF EVIDENCE—EXISTENCE OF RELATION.**

In a railway conductor's action for injuries, in which defendant claimed that plaintiff was working for an independent construction contractor, evidence *held* sufficient to sustain a finding that he was defendant's employé and was engaged in the performance of the duties required of him by defendant when injured.

**12. APPEAL AND ERROR ☜1001(1)—REVIEW—CONCLUSIVENESS OF VERDICT.**

Though there was direct and circumstantial testimony to prove that plaintiff was in the service of the independent contractor, the jury's determination in favor of plaintiff on sufficient evidence bound the Court of Civil Appeals.

**13. TRIAL ☜194(9) — INSTRUCTIONS ON WEIGHT OF EVIDENCE — INJURIES TO EMPLOYÉ.**

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 1971, providing that the court shall not charge or comment on the weight of the evidence, an instruction, in an action for injuries, that the making of an application for employment, and an agreement proved as to plaintiff's seniority on defendant railroad company's list of conductors, did not constitute an employment by the railroad company, was properly refused, where it was not in explanation of any legal terms used in the special issues.

**14. TRIAL ☜251(8) — INSTRUCTIONS — APPLICABILITY TO ISSUES.**

Where the special issues did not ask whether plaintiff was an employé or defendant an employer, though one of the issues asked whether plaintiff was in defendant's employ, a requested instruction defining the words "employer" and "employé" was not pertinent and was properly refused.

**15. TRIAL ☜251(8) — INSTRUCTIONS — APPLICABILITY TO ISSUES.**

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 1984a, providing that in submitting special issues the court shall submit such explanations and definitions of legal terms as shall be necessary to enable the jury to properly pass upon and render a verdict on such issues, an instruction in a railway conductor's action for injuries that a person named was an independent contractor, and that defendant was not liable for his negligent acts, was properly refused, where it was not an explanation or definition of any term used in any special issue given.

**16. TRIAL ☜350(8)—SPECIAL ISSUES—UNDISPUTED FACTS.**

Under Vernon's Sayles' Ann. Civ. St. art. 1985, providing that the special verdict must find the facts established by the evidence, and that it shall be the duty of the court, when it submits a case to the jury upon special issues, to submit all the issues made by the pleadings, undisputed facts should not be submitted in special issues.

**17. TRIAL ☜350(6) — SPECIAL ISSUES — EVIDENTIARY OR ULTIMATE FACTS.**

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 1985, providing that the special verdict must find the facts established by the evidence, and not the evidence by which they are established, where there was a dispute as to wheth-

er plaintiff was in defendant's employ when injured, an issue as to who gave plaintiff instructions to do the work at which he was injured, and other instructions requiring a finding of the evidence by which the fact of employment was to be determined and not the fact of employment itself, were properly refused.

**18. APPEAL AND ERROR ☜692(1)—RECORD—MATTERS PRESENTED BY REVIEW.**

An assignment of error complaining of the sustaining of an objection to a question will be overruled where the bill of exception does not show what answer the witness would have made.

**19. EVIDENCE ☜471(30)—FACTS OR CONCLUSIONS—AGENCY.**

Testimony that a witness was collecting money and tickets for a named railroad company stated facts, and not the conclusions of the witness.

**20. APPEAL AND ERROR ☜500(3)—RECORD—RULINGS—NECESSITY OF SHOWING.**

The failure to exclude testimony on motion will not be considered where the bill of exception does not affirmatively show that the court ruled on the motion.

**21. EVIDENCE ☜116—ADMISSIBILITY—MATTERS EXPLANATORY OF FACTS IN EVIDENCE.**

Where, in a railway conductor's action for injuries, defendant alleged and attempted to prove that the relation of master and servant did not exist between it and plaintiff, and in this connection introduced evidence that plaintiff took orders from, made reports to, and was paid by certain persons claimed by it to be agents of an independent construction contractor; testimony that these agents represented both the contractor and the railroad company was relevant.

**22. EVIDENCE ☜155(1) — ADMISSIBILITY BY REASON OF ADMISSION OF OTHER EVIDENCE.**

Where defendant introduced in evidence the business relationship between it and the contractor, it was proper for plaintiff to develop the details of such relationship, especially on cross-examination.

**23. APPEAL AND ERROR ☜499(1)—RECORD—PRESENTATION OF OBJECTIONS.**

An assignment of error complaining of the argument will be overruled where the bill of exception states no reason for the objection to the argument, especially where it appears therefrom that the argument was entirely within the record and proper.

**24. TRIAL ☜352(5)—SPECIAL ISSUES—ISSUES ASSUMING FACTS.**

In a railway conductor's action for injuries, in which defendant claimed that plaintiff was working for an independent construction contractor, a special issue as to whether it was negligence "on the part of defendant railroad company to have and permit said brake wheel and its attachments to be in such insecure and defective condition," though, standing alone, subject to the objection that it assumed that the car was defendant's property and that plaintiff was in defendant's employ, was not misleading, where in preceding issues the jury were asked whether plaintiff was in defendant's employ when injured, whether such car was being moved in the operation of the railroad by defendant when he was injured, whether it was defendant's property, and whether the brake wheel and attachments were insecurely fastened and in a defective condition.

**On Motion for Rehearing.**

**25. DAMAGES ☜132(10) — EXCESSIVENESS — PERSONAL INJURIES.**

A railway conductor 45 years old, and having an earning capacity of about $125 a month, was thrown under a car and badly crushed, necessitating the amputation of one leg and three operations on the other, in which so much of

---

☜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the bone was taken out that it was in danger of breaking at any time. That leg was also deformed, and the wounds were still exuding matter three years after the injury. He also suffered painful and permanent impairment of the heart, kidneys, eye, head, and abdomen, besides minor cuts and bruises, and he was confined in the hospital for over 17 months. *Held*, that a verdict for $30,000, though large, was not excessive.

Appeal from District Court, Bexar County; R. B. Minor, Judge.

Action by G. R. Dawson against the San Antonio, Uvalde & Gulf Railroad Company. From a judgment for plaintiff, defendant appeals. Affirmed.

J. A. Germany, of Dallas, and J. C. Hall and Mason Williams, both of San Antonio, for appellant. Perry J. Lewis, Champe G. Carter, Randolph L. Carter, and H. C. Carter, all of San Antonio, for appellee.

SWEARINGEN, J. This is a suit for damages for personal injuries brought by G. R. Dawson, appellee, against the San Antonio, Uvalde & Gulf Railroad Company. Special issues were submitted to a jury, upon the verdict of which judgment for $30,000 was rendered against appellant. A. R. Bonder and Duval West, receivers of the property of the railroad, were made parties, in whose favor judgment was rendered.

The cause alleged in appellee's first amended original petition was that appellee, while in the employ of the appellant railroad company in the capacity of railroad conductor, and while in the performance of his duties as such conductor, was seriously and permanently injured by the negligence of appellant. The negligence alleged is:

"That while one of said cars was being moved, in the discharge of his duty plaintiff got upon the end thereof in order to make his way to the opposite side of the train; that upon the end of said car, at the point where it was necessary for the plaintiff to have a handhold, there was no handhold, but there was a brake wheel that was used by defendant company's trainmen to sustain themselves in passing over said car; that in passing over said car, as was proper, right, and usual, plaintiff took hold of said brake wheel, in order to sustain himself; that when the plaintiff took hold of said brake wheel the wheel and its attachment gave away, and caused the plaintiff to be thrown headlong in front of the moving car; that plaintiff charges that it was defendant company's duty to use ordinary care to see that said brake wheel and its attachments were properly fastened, but, notwithstanding this duty, said defendant company negligently caused and permitted said brake wheel, the staff thereof, and the bolts and fastenings that should secure the same, to become loose, insecurely and defectively fastened, and by reason of this said brake wheel and its attachments, by reason of defendant's negligence, was insecurely and defectively attached to said car, and by reason of said defects said brake wheel and its attachments gave away with the plaintiff, and this negligence of the defendant company directly caused his injuries, without fault on the plaintiff's part.

"(5) The plaintiff charges that the aforesaid defects in said brake wheel and its attachments could have been discovered by the defendant company by the use of ordinary care, but said

defendant company wholly failed to use any care whatever."

In its first amended original answer the appellant assailed the petition by a general demurrer and five special exceptions, all of which were overruled, concerning which action no error is assigned.

Appellant's answer generally denied the allegations of the first amended original petition; and specially denied each of the material allegations; and, further, in defense, averred:

"That on or about the 29th day of November, 1913, at the time the plaintiff is alleged to have been injured, this defendant company was not operating its trains or any of its cars at the place of the alleged accident; that it was not a common carrier of freight for hire through the town of Mathis, Tex., on the date alleged by the plaintiff when he was injured; that the plaintiff was not, at the time he alleged to have been injured an employé of this defendant company; that at the time the injury is alleged to have occurred this defendant company had a written contract with J. E. Franklin, of St. Louis, Mo., under the terms of which written contract the said J. E. Franklin agreed, as an independent contractor, to construct for this defendant railroad company that part of the road upon which the plaintiff is alleged to have been injured; that this defendant alleges, upon information and belief, that at the time of the plaintiff's alleged injury he was employed by the said J. E. Franklin, who was an independent contractor for the San Antonio, Uvalde & Gulf Railroad Company, and at the time the plaintiff is alleged to have been injured he was working for the said J. E. Franklin and not for this defendant company; that at the time of the plaintiff's alleged injury this defendant company had no supervision over the plaintiff, and had no right to control him in his work, neither had it the right to hire or discharge the plaintiff at the time of his alleged injury, but he at said time was under the immediate control and supervision of the said J. E. Franklin, an independent contractor. * * *"

Furthermore, the answer averred J. E. Franklin's residence to be in St. Louis, Mo., but that he could be often found in Bexar county, Tex., and personal service of citation could be had upon him. The answer concluded with the words:

"In the event, however, judgment should be rendered against this defendant company, then it prays that it have judgment over against J. E. Franklin for any amount recovered against it, and for costs and general and special relief."

J. E. Franklin was not a party to the suit.

In a first supplemental petition appellee demurred to the averments of the answer, generally denied them and specially traversed the averments that appellant was not operating the train, did not own the defective car, and was not the master of appellee, as follows:

"The plaintiff says that J. E. Franklin, who is alleged to be an independent contractor at the time the plaintiff was injured, was the president of the San Antonio, Uvalde & Gulf Railroad Company; that the plaintiff was employed by the defendant railroad company as a conductor of its trains at the time and place he was injured, and he had no knowledge whatever of being in the employ of any one save the defendant railroad company; that if the defendant railroad company or its receivers should offer

any testimony tending to show that the plaintiff was in the employ of J. E. Franklin, an independent contractor, that said testimony would not be true, and at best said untrue testimony would only tend to show that the said plaintiff was in the joint employ of both the said defendant railroad company and said J. E. Franklin, and, should it be found that the plaintiff was in the joint employ of said defendant railroad company and said J. E. Franklin, such a finding would be no defense to the plaintiff's cause of action, and in event such a finding is made the plaintiff says that, even under such facts, the defendant railroad company would still be liable to this plaintiff; that the defective car mentioned in plaintiff's petition,' as well as the other cars and the locomotive in the train being handled, were owned or operated by the defendant company, and it was said defendant company's duty to use ordinary care to maintain said car in a reasonably safe condition to be handled by those whose duty it was to handle it; that, regardless of plaintiff's employment, it was negligence on the part of the said defendant company to permit said car to be in such defective condition, and as aforesaid plaintiff was handling said car in the discharge of his duty, and therefore the said defendant company is liable to the plaintiff for the damages which its negligence directly produced."

Appellant addressed, in a supplemental answer, a general demurrer and two special exceptions to the first supplemental petition, all of which were overruled. Error in overruling the two special exceptions is assigned for our review.

The facts are that on November 29, 1913, appellee was a train conductor, and while in the performance of his duties found it necessary to use a brake wheel on car No. 173 as a handhold; that the brake wheel and its attachments on said car were insecurely fastened, and were in a defective condition as alleged, which constituted negligence, which negligence directly caused the injuries suffered by appellant; that the injuries were serious and permanent, causing appellee great pain and impairing his earning capacity.

In addition to the foregoing facts, the jury found that appellee at the time of his injury was "engaged in doing service for the" appellant railroad company, was in the employ of same, and was injured while engaged in said employment. The jury further found that at the time of the injury the car No. 173 was being moved by the appellant railroad company either in the operation of its railroad or in work incidental to such operation, and that the car No. 173 belonged to the appellant company. There was evidence to sustain these facts found by the jury, and, in deference to the verdict, we find them as facts established by the evidence in this cause.

[1] Assignments numbered 1 and 2 complain of the decree overruling two special exceptions to the first supplemental petition. The first exception is that the allegation that J. E. Franklin was the president of the appellant railroad company was injurious and irrelevant. We think the allegation was relevant, in view of appellant's contention that J. E. Franklin was an independent contractor.

[2] The second exception is that specified allegations in the supplemental petition were mere conclusions and not statements of facts. The criticism is probably correct; but the conclusions were concerning questions that did not affect the verdict or the judgment and, in accordance with rule 62a (149 S. W. x), if error, would not be reversible error. The conclusions complained of were concerning the liability of the railroad company in the event appellee was, at the time of his injury, in the service of J. E. Franklin, an independent contractor. The jury found, upon sufficient evidence, that appellee was in the service of the railroad company and the judgment was based upon that finding. Both assignments are overruled.

[3] The third assignment contends that the first special issue should not have been given. The issue is:

"At the time the plaintiff, G. R. Dawson, claims to have been injured, on November 22, 1913, was he engaged in doing any service for the defendant, San Antonio, Uvalde & Gulf Railroad Company?"

The objection to the instruction is that it submits an immaterial issue.

The issue made by the pleadings is, Who was the master of appellee when injured? To determine this issue, appellant introduced testimony tending to prove that appellee worked intermittently for appellant and for Franklin, an independent construction contractor. Appellant's testimony tended to furnish a certain test from which the jury could determine who was the master at the moment of the injury. That test was, Whose service was appellee engaged in at the time? Appellant's testimony tended to prove that the service was that of construction, and for Franklin; while appellee's testimony tended to prove the service was transportation of passengers and freight, and therefore for the railroad company. The issue submitted, therefore, was material to the contention insisted upon by appellant as material. The third assignment is overruled.

[4] The fourth assignment complains that it was error to ask the jury if appellee was in the employ of appellant when the injury occurred. The seventeenth assignment complains that it was error to refuse to submit the question in another form, viz., Was appellee in the employ of the contractor when the injury occurred? The issue of who was the master was made by the pleadings and became sharply contested by the evidence, and was properly submitted. The language used is not subject to criticism. The same issue could have been submitted in either the form given or in the form refused, but, being given in one form, it was not error to refuse to give it in the refused form.

[5] The real contention presented by assignments 4 and 17 is that each group of

facts pleaded and supported by testimony should be affirmatively submitted to the jury even when the case is submitted upon special issues, as is the rule when the submission is by general charge. Such is the rule where the case is submitted by general charge. M., K. & T. Ry. Co. v. McGlamory, 89 Tex. 635, 35 S. W. 1058; Wichita Falls Traction Co. v. Adams, 107 Tex. 612, 183 S. W. 155. We think that rule has no application where the case is submitted upon special issues. In accordance with a general charge, the jury is required to find for or against one of the parties; whereas, by special issues, "the jury, as triers of facts solely, had nothing to do with the legal effect of their findings." Fain v. Nelms, 156 S. W. 281, § 4; G., H. & S. A. Ry. Co. v. Hodnett, 182 S. W. 7. The fourth and seventeenth assignments are overruled.

The foregoing reasons also require us to overrule the ninth and tenth assignments of error, which contend that the court should have affirmatively submitted the groups of facts pleaded and testified to by appellant.

[6] The fifth assignment is that the court erred in asking the jury, "Was the appellee at the time of injury engaged in the discharge of his duties as appellant's employé?" The objection is that the question submitted to the jury is a question of law. The objection is not tenable. The fifth assignment is overruled.

[7] The seventh assignment charges that it was error to ask the jury whether box car No. 173 belonged to the appellant at the time of the injury. The proposition is that the question is one of law, not of fact. The question submitted a fact, not law, in the meaning of the statute, art. 1985. The seventh assignment is overruled.

[8] The eighteenth assignment complains of error because the court refused to give special issue No. 14, requested by appellant. Issue No. 14, which was refused, instructed the jury to find whether box car No. 173 belonged to the contractor Franklin at the time of the injury. The fact of ownership of that car was submitted in a form selected by the court, and it was not error to refuse to submit the issue in the form desired by appellant. As in the fourth assignment, appellant claims the right of an affirmative submission of groups of facts pleaded by it, even when the case is tried by special issues. This has been determined against appellant's contention in our discussion of the fourth assignment.

[9] Under the sixth assignment we are called upon to determine an elemental question of syntax. The objection directed against the question submitted is that it submits two issues in one, requiring two answers. The question is: "At the time the plaintiff claims to have been injured, on November 29, 1913, was box car No. 173 being moved by the defendant, San Antonio, Uvalde & Gulf Railroad Company, in the operation of its railroad, or in work incidental to such operation?" It will be noticed that the sentence is what is denominated a "simple sentence" in the rules of syntax; that is, that only one principal statement is made. The prepositional phrases "in the operation of its railroad" and "in work incidental to such operation" are merely adverbial phrases modifying the predicate. In order to be subject to the criticism made by appellant, the sentence must have been constructed into a compound sentence, composed of two co-ordinate clauses. The sixth assignment is overruled.

[10] The eleventh assignment insists that it was error for the court to refuse the following peremptory instruction: "You are instructed to return a verdict for the defendant, the San Antonio, Uvalde & Gulf Railroad Company." The contention is that there is no evidence of probative force to prove liability against the appellant. If there was any evidence, as defined by the Supreme Court in the case of Joske v. Irvine, 91 Tex. 574, 44 S. W. 1059, that appellee was an employé of appellant at the time of his injury, and was at that time performing the duties of his employment, and that the negligence of appellant proximately caused his injuries, then the peremptory instruction was properly refused, otherwise it was error.

[11] The greater part of the testimony introduced bore upon the question of who was appellee's master at the time. Appellee testified that he made a written application for employment by the railroad company; that the blank form of the application was furnished him by the superintendent of the appellant railroad company; that this application was filled out by himself and delivered to the agent of the railroad company; and that the application was granted by the railroad company. He further testified that by virtue of that application he was put to work by the railroad company as conductor; that as such conductor he was at the time of the injury engaged in making up a train for the purpose of hauling passengers and freight according to schedule of the railroad company. The application itself is addressed to the railroad company, and its terms bind appellee to perform certain duties for the railroad company, and bind appellee to certain waivers of appellee's rights in favor of the railroad company. The agent of the railroad company accepted that application and indorsed on it his acceptance by writing on it the date from which appellant became an employé of the railroad company. The agent was named Whitfield, and the fact of acceptance was testified to by Mr. Rieck, superintendent of the railroad company. The ratification of some of the terms of the contract was further shown by the fact that appellant submitted himself when injured to the railroad company's surgeons as the application provided, and he was treated by them in the railroad company's hospital.

Appellee further testified that he never heard that he had been employed by Franklin until after his injury. Mr. Rieck testified that if at the time of the injury appellant was engaged in the service of hauling passengers and freight over the railroad from any point to Mathis, that service was for the railroad company. Appellee testified that when injured he was making up a train to transport passengers and freight from the Nueces river to Mathis. The foregoing testimony alone is sufficient evidence of probative force to sustain the finding of the jury that appellee at the time of the injury was an employé of the appellant railroad company, and was engaged in the performance of the duties required of him by his employer, the appellant company. There was sufficient evidence of negligence that proximately caused the injury.

[12] There was much direct and circumstantial testimony to prove that appellee was in the service of an independent contractor who was constructing the railroad; but the jury determined the issue in favor of appellee, which determination binds us. The eleventh assignment is overruled.

[13] The twelfth assignment is overruled. The court properly refused to instruct the jury upon the weight of the evidence. The statute expressly forbids it. Vernon's Sayles' Civ. St. art. 1971. The instruction refused it:

"You are instructed that the making of an application for employment by the plaintiff, and the agreement proven as to plaintiff's seniority on the railroad company's list of conductors, does not constitute an employment by the railroad company."

The instruction requested is not in explanation of any legal terms used in the issues given. Vernon's Sayles' Rev. Civ. St. 1984a.

[14] The thirteenth assignment is overruled for the reason that the instruction requested and refused was misleading and was not explanatory of any of the special issues given to the jury. The jury were not asked whether appellant was an employer nor whether appellee was an employé. The second issue given was whether appellee was in the employ of the appellant. The court was not requested to define the meaning of the word "employ," as used in that second issue given, and the definition requested of the words "employer" and "employé," even if correct, would not have been pertinent to the second issue.

[15] The fourteenth assignment is that the court erred in refusing to charge to the effect that J. E. Franklin was an independent contractor and that the railroad company would not be liable for his negligent acts. The reason assigned in the bill of exception why this was error is that the proof shows without contradiction that Franklin was such contractor, and that it necessarily follows that the railroad company would not be liable. The charge requested is not an explanation or definition of any term used in any special issue given, and hence not required by the statute (article 1984a).

[16] No undisputed facts should be submitted in special issues. Vernon's Sayles' Rev. Civ. St. § 1985. The fourteenth assignment is overruled.

For the same reasons given in disposing of the fourteenth assignment, the fifteenth is also overruled, and likewise the sixteenth.

[17] The nineteenth assignment complains of the refusal to submit a requested special issue. The issue requested required the finding of the evidence by which the fact of employment was to be determined and not the fact of employment. Such questions are expressly forbidden by article 1985, Vernon's Sayles' Rev. Civ. St. The nineteenth assignment is overruled.

For the same reasons the twentieth assignment is overruled. The question presented in this assignment is, who gave appellee instructions to do the work at which he was injured? The fact to be established is, Was appellee in the employ of appellant when injured? The refused question, it is apparent, required a finding of evidence that tends to prove the fact of appellee's employment by appellant. Then again, the issue of who was the master was properly submitted by the court in its second issue.

The reasons above mentioned also require us to overrule the twenty-first assignment.

The twenty-third assignment is overruled because the issue requested was given by the court in special issue No. 6 in language that more nearly conformed to the issue of fact made by the pleadings and evidence.

[18] The twenty-fourth assignment is overruled because the bill of exception does not show what answer the witness would have made if the objection had not been sustained to the question. Shoe Co. v. Ferrell, 68 Tex. 638, 5 S. W. 490; Moss v. Cameron, 66 Tex. 412, 1 S. W. 177; Dunham v. Forbes, 25 Tex. 25.

[19] The twenty-fifth assignment urges that the court erred in overruling appellant's request to exclude certain testimony, objected to when offered. The objectionable questions and answers are:

"Q. Whom were you collecting that money for? A. San Antonio, Uvalde & Gulf Railroad Company. Q. Whom were you collecting tickets for? A. San Antonio, Uvalde & Gulf Railroad Company."

The objection made is that the answers are merely conclusions of the witness. The objection is not tenable. The answers state facts. The twenty-fifth assignment is overruled.

[20] The twenty-sixth assignment is overruled because the bill of exception does not show any order of the court complained of. After questions and answers covering the interest of J. E. Franklin in the railroad company were in evidence, appellant's counsel asked that it be excluded. The bill of exception shows that the court discussed the

objections made, but never ruled upon the motion to exclude. The motion seems to have been allowed to fade away after appellee's counsel stated he would ask no further questions along that line. The bill of exception must affirmatively show that the court actually did rule upon the motion, in order to be considered by us.

[21] The twenty-seventh assignment is overruled. It was not error to permit the appellant's witness, who was president of the appellant company, to testify on cross-examination that two of the important officials of the appellant company also held official positions with J. E. Franklin, the construction contractor. Appellee alleged and endeavored to prove that the relation of master and servant existed between himself and the railroad company at the time of the injury. Appellant, by pleading and testimony, endeavored to refute this, and to that end endeavored to prove by circumstances, as well as direct evidence, that appellee's master at the time of injury was an independent construction contractor. Among the circumstances, it was testified by appellant's witnesses that appellee took orders from, made reports to, and was paid by certain agents, claimed by appellant to be agents of the contractor, and claimed by appellee to be agents of the appellant railroad company. The testimony that these agents represented both the contractor and the railroad company was relevant because it tended to explain why appellant, if a servant of the railroad company, received orders from agents of the two masters.

[22] The twenty-eighth assignment is overruled because the business relationship between the contractor and the appellant was introduced in evidence by the appellant, and it was proper for appellee to develop the details of that relationship, especially on cross examination.

The 29th, 30th, 31st, 32d, 33d, 34th, 35th, 36th, 37th, 38th, 39th, 40th, and 41st assignments all complain of the action of the court in overruling objections to the admission of testimony. The objections were that the testimony sought was irrelevant and prejudicial. We have examined each bill of exception supporting each assignment with care, and find in every instance that the testimony was so clearly relevant and admissible that the objections do not seem to merit extended comment upon each separate assignment.

To defend against liability for negligence which inflicted indescribable suffering and physical ruin upon the appellee, the appellant proved that one man, J. E. Franklin, had a double entity, one as contractor for building a railroad, the other as president of a company which operated the railroad. Appellant endeavored to prove that appellee was employed to perform the duties of railroad conductor, one minute for the contractor, and the next for the president. The change of masters, from contractor to president, appellant sought to have determined by the system of bookkeeping; the changing of ownership of cars, which flitted from contractor to president "like ships that pass in the night"; by acceptance of indefinite piecemeals of the roadbed by the president from the contractor; and by the constantly changing use of the roadway and rolling stock, first by the president, then by the contractor. That this character of testimony by the appellant made relevant the further details of these varying transactions between the president and the contractor is plain. All assignments from the twenty-ninth to the forty-first, inclusive, are overruled.

[23] The forty-second assignment is overruled because the bill of exception states no reason for the objection to the argument. It is apparent from the bill of exception that the argument was entirely within the record and proper; hence this court, like appellant's counsel, is unable to supply the omitted reason, even if the rules permitted us to do so.

The forty-third assignment urges that there is no evidence to support the verdict of the jury, and the forty-fourth urges that the verdict for $30,000 is excessive. There is ample evidence to support both findings of the jury. The evidence of liability has been sufficiently indicated hereinbefore. The injury suffered was the loss of both legs, as well as painful and permanent impairment of the heart, kidneys, eye, head, and abdomen. Appellee was 45 years old when injured, and had an earning capacity of about $125 a month, from his ability as a railroad conductor, which business he had evidently performed with efficiency, and which business his injuries completely unfit appellee from ever again undertaking. Both the forty-third and forty-fourth assignments are overruled.

[24] By the eighth assignment it is claimed that the following question assumes as true a disputed fact: "Was it negligence on the part of defendant railroad company to have and permit said brake wheel and its attachments to be in such insecure and defective condition?" As stated in the case of S. A. & A. P. Ry. Co. v. Sutherland, 199 S. W. 521: "If the issues (issue) stood alone, they would be subject to the construction contended for, but the charge must be considered as a whole." The issues submitted, preceding the question here complained of, asked whether appellee was in the employ of the railroad company when injured; whether box car No. 173 was being moved in the operation of the railroad by appellee when he was injured; whether box car 173 was the property of the railroad company at that time; and whether the brake wheel and attachments on said box car No. 173 were insecurely fastened and in a defective condition. Then it was after this last ques-

tion that the issue objected to in this assignment was submitted. There is not the slightest probability that the jury was led by the form of the question to think that the court assumed that box car No. 173 was the property of appellant or that the appellee was in the employ of the railroad company.

There is no reversible error presented by the 8th assignment. The case cited (Cunningham v. Ry., 51 Tex. 503, 32 Am. Rep. 632), sheds no light on the subject. That case simply repeats the well-established doctrine that a railroad company would not be liable for the negligence of an independent contractor over whose operations the railroad company had no control. It was no doubt in accordance with the doctrine announced in the Cunningham Case that appellant endeavored to defend in the instant case. Had the evidence satisfied the jury that appellee was injured while working for the contractor, by the negligence of the contractor, and that the appellant had no control over the work, the defense would have been established; but the jury, upon evidence of probative force, found facts to the contrary. The assignment is overruled.

The twenty-second assignment complains of the refusal of two special issues requested by appellant. The precise issue of fact requested was submitted to the jury in language, selected by the court, differing but little from that used by appellant's requested issue. The difference was not material. The twenty-second assignment is overruled.

The judgment is affirmed.

### On Motion for Rehearing.

[25] It is earnestly insisted in appellant's motion for rehearing that the judgment for $30,000 is excessive. We agree with appellant that it is an enormous sum. But when we consider the undisputed evidence of the suffering and injuries, and after carefully reviewing the record, which reveals no improper testimony, no erroneous instruction, and no improper argument, we are unable to say that the amount of the judgment was the result of prejudice or passion, or that it is not sustained by the evidence or precedent. The correctness of this conclusion is made clear by the following quotation from appellee's brief:

"G. R. Dawson testified: On knocking me down, it threw this left leg across the rail, taking it off above the shoe top (indicating left leg). I caught hold around this axle this way (illustrating), but couldn't hold on to it, kept turning my hands loose. Then the wheel caught me here on the opposite side (indicating forehead of left side). At that time I threw myself around, and the dead lever caught me here in the left breast, crushing me and rolling me in about an eight-inch space, probably a little more, but not much; threw me over—it threw this leg in between the wheels (indicating right leg below the knee) and wheel ran over it there (indicating the place on right leg). When they got the train stopped, I had made one complete turn, and the dead lever was just hanging onto me here, across the hip (indicating), from the railing from here to here (indicating). They pulled me out from under the car more dead than alive. There were two large cuts on my right arm here (indicating), this breast (left) was caved in, and I spit blood and had severe coughing spells for at least five weeks while in the hospital. I was black and blue and couldn't raise an empty teaspoon in that time; I had to be fed. I lay fourteen months and one-half, more or less, flat upon my back, and never turning an inch one way or the other, sleeping with the right leg in a fracture box, not even a cast to hold it, and during that time I suffered pain that I couldn't tell you; I couldn't begin to describe it. The first three months of my life in that hospital was the awfullest thing, gentlemen, that you ever saw; it was something horrible—having had to undergo all these different operations, having never recovered from it, and I never will. I can't do anything to-day in the way of labor. I am able to sit down and do the work, but my head isn't right yet, and the pain I suffer day in and day out is enough to drive nine men out of ten crazy. I am suffering all the time with my abdomen and that side where I was crushed; it is beyond description for me to try to tell you, but I have tried to bear it; I have tried to look upon the bright side of life and carry through with everything, but it will carry that way with me until I am in my grave; I know it. I had been a railroad conductor since 1897. I know and am familiar with the average earnings of conductors working on roads in and out of San Antonio—freight conductors on the I. & G. N., Southern Pacific, Sap, and other roads. Their average earnings will run from $150 to $200 a month, according to the class of service you are in, greatly. I claimed to be an expert conductor. Before I was injured, at the time I had this particular job, I was earning about $110 or about $115 a month on this job—this work. This road did not pay the standard wages to conductors. Previous to this injury I had run a train in Mexico for a number of years, and my earnings there would average about $170 gold a month, United States currency. Since I have been injured, about the only thing I could do was sitting around the I. & G. N. Hotel office and helping out. I suffer pain now from my heart, my backbone, my kidneys, and the entire right side of my abdomen, and my heart hurts. My right leg is always suffering too—the stump; the same as my left leg, troubles me a good deal; it bothers me on account of the nerves. I don't sleep well. I go to bed at 9:00 or 10:00 o'clock. I am awake every morning at 3:30 or 4. I wake up with a kind of nervous shock, and it wakes me. Then I begin to twist around; I don't get much rest. I have to get up to urinate two or three times a night on an average, and I have pain with it; my kidneys hurt and my urine burns my urethra and bladder. My left side over my heart was mashed; the condition I found was, when I took a long breath my chest was crushed in. I spit blood, as near as I can remember, about five weeks. As I stated, there were cuts and bruises over my body and limbs. In the first place, these were all skin abrasions through here (indicating), what I say (indicating side of the head and front of the ears), and this side was all skinned, and abrasions on my right arm between my elbow and wrist, two long cuts paralleling each other. My left chest was crushed in on my lung, my ribs about the right side were all crushed and bruised, and my right hip seemed torn loose almost; it was torn loose from the bone in, the way it felt, it hurt so. My back was all sore. I suffered with it, and I suffer now with my back, with pains of the muscles all along each side and joints in the vertebræ, and through the small of the back here (indicating). It is sore, always has been; never got over it. Before

this accident my hearing was good. Now it is no good—it is impaired; my hearing is nothing like I had. My eyesight was good; I have to use glasses now to read and write. When this accident happened, I was forty-five years of age. When I use glasses, I can read about an hour, and the effect it is blurs on my reading and the lines run together. My strength now, compared to what it used to be, is poor. Before this accident I claimed to be an A No. 1 man, physically strong and healthy. My heart affects me when I get out and move around. If I take a little walk—a long walk—it goes to thumping on me and gets me all out of breath; and then if I overexert myself during the day, then I have pains at night there also, from that lung there, which is causing me trouble. After I was taken to the hospital, I lay flat on my back fourteen months and a half. I was in the hospital altogether seventeen months. They performed four operations on my legs. They performed one operation on the left leg, that is when they cut it off, and performed three operations on the other leg. Q. What did they do in those three operations? A. They cut out the bone in the first operation, the first time; and dressed the leg up and took out the bone. Q. That was the right leg? A. Yes, sir; that was the right leg. And then along about the 6th of March I went under the other operation; that was the right leg, and they taken out a great big piece of the shin bone in here, (indicating). Q. Well, was there any suffering about that? A. Oh, yes; suffering. Heavens! I couldn't tell it; it is beyond my expression. The third operation was in July following, when they had to cut off some more bone up in here (indicating right leg), that was diseased. I was a long time getting over that operation; the anæsthetic I took in that operation hurt my lungs a good deal at that time. I was a long time getting over that. Q. Now, will you please show the jury the condition of those legs? A. Yes, sir; I guess I will have to take off my clothes, won't I? Q. Yes, sir, so they can see—just let them see both legs. (Witness removes his clothing about his legs and the jury examined both legs.) I haven't got any use of that foot at all (indicating right foot). This is the first time that front has healed up in over three years (indicating on right leg); just a little pus comes out of the back part yet. Q. Is there any there now? A. Yes, sir; a little (wiping leg). That wound goes entirely through the leg; there was a drainage tube went through there from here to here (indicating)—went entirely through my leg.

"Doctor Berrey testified: As to what I find his condition to be—well, he has had an amputation of the left leg. He evidently had a fracture of the right leg about here (indicating), probably a little below the middle of the third bone, and I judge from the condition of the leg that there must have been quite an amount of bone removed. It is still unhealed yet; it is open and still suppurating; still having a secretion of pus there, and I find at present to-day he has a pulse rate of 120 to the minute, and that his breathing is too fast. The normal pulse rate is about 60 to 80. He suffers pain in the right side just above the groin, just about here (indicating). Those were about the conditions. The left leg is amputated about six inches below the knee, as well as I recollect —that is about the place of amputation. I have examined the other leg from which the bone has been removed, and as to the danger of its breaking and giving way with that amount of bone taken out, I will say that he has got a large amount of bone out, and any sudden jar, any misstep, anything of that kind, with such a small amount of bone there, is liable to fracture it in that locality, and if it did, it would be a very serious matter. The leg is bad at that point; the discoloration is bluish in color, and to repair a broken bone at that particular point would be a very difficult matter. It might possibly result in amputation if he had a rebreaking at that point. There is quite a large cavity in that leg where this bone has been taken out; I didn't measure it, but quite a cavity—about so long, I suppose (indicating). It is in a kind of convex form, scooped out, you might call it—a cavity. The leg is deformed there. The amount of weight he could put on that leg with safety I couldn't say, as I remarked a while ago, but I think, with the little bone left there, any undue exertion, any misstep, anything of that kind, might break that bone at that particular place, because there is where it is weak, and if he did, if he couldn't get union, there would be nothing left for him except amputation. This overworking of the heart and rapid beating, if it keeps up, will in time lead to organic trouble—that will in time lead to heart trouble. With reference to the evidence of pain, suffering on the right side here about the groin—just what that is I have never been able to make out definitely; I must say I don't know; but every time I have seen him he has complained of pain on the right side, and every time that I have seen him he has had difficulty in breathing, and also I have noticed the heart's action, the rapidity of it. These conditions are independent, of course, of his amputated limb and the condition that I found in the other limb as I have described it. Independent of the two bad legs, I would not regard him as able to do manual labor as long as his heart is in the condition it is in now. If he had two perfectly good legs, and a heart running 120 to the minute, continuously, that itself would incapacitate him for manual labor. Where the heart beats that fast it deteriorates the strength of a man, because the more rapid his heart beats the more rapid he breathes; breathes more rapidly."

Two of defendant's surgeons had been constantly treating the plaintiff since his injuries and they were not called upon to testify. If it is possible to inflict injuries upon a human being that damage him to the extent of $30,000, the verdict cannot be held excessive. One leg is gone; the other is in a condition which, had the court seen the leg, it would agree with us, is worse than amputation. The car wheel went over the right leg and crushed it so badly that saving it from amputation was miraculous. Three severe operations were required, and the bone taken out to such an extent that any misstep may cause the breaking of the limb. More than three years after the injury the wounds are still exuding pus, and the leg is deformed, and movement of the foot prevented. The testimony shows that the plaintiff's mind has been impaired, his chest and body mashed and crushed, his back weakened and full of pain. His internal organs refuse their proper functions, and the agony that he has suffered and is suffering and must always suffer is beyond description. The plaintiff was comparatively a young man and had a large earning capacity. Fifteen years of his ordinary earning capacity would have amounted to the verdict given, to say nothing of the exquisite agony that he must always endure. The plaintiff is in a worse condition than a man who has lost two legs.

In the case of Railway v. Shelton, 30 Tex. Civ. App. 72, 69 S. W. 653, it was held that $35,000 was not excessive for the loss of two legs.

In the case of Railway v. Kelly, 34 Tex. Civ. App. 21, 80 S. W. 1073, the syllabus says:

"In an action against a master for injuries to a servant, 54 years of age, it appeared that plaintiff's injuries were to the back and spine, and a concussion of the spinal cord, and had resulted in total paralysis of his lower limbs; that he suffered great pain; that his eyes and digestion were affected, and that the pain kept him awake; that he had shown no improvement within a year, and that it was the opinion of physicians that the paralysis was permanent. It was shown that prior to the injury he had been earning from $100 to $125 per month. *Held*, that a verdict of $30,000 was not excessive."

In the case of Railway v. Gray, 137 S. W. 729, the Austin court held that $30,000 was not excessive compensation for a railroad brakeman paralyzed from the hips down.

In the case of Railway v. Webster, 99 Ark. 265, 137 S. W. 1103, 1199, Ann. Cas. 1913B, 141, the syllabus says:

"$35,000 is not excessive recovery for personal injury to a railway trainman, 35 years old, who was previously in perfect health, where the injury has caused lateral curvature of the spine, intense pain, and permanent incapacity, physical and otherwise."

This court held that $30,000 was not excessive damages for a boy whose face and hands were mutilated and who was rendered almost blind by an explosion. Waters-Pierce Co. v. Snell, 47 Tex. Civ. App. 413, 106 S. W. 170.

In Railway v. Matkin, 142 S. W. 604, the Austin court held $35,000 not excessive compensation for the loss of both legs below the knees.

The Supreme Court of South Carolina, in Huggins v. Railway, 96 S. C. 267, 79 S. E. 405, held that a verdict of $40,000 was not excessive where a railroad engineer 35 years old was permanently disabled and confined to his bed.

In Yurkonis v. Railway (D. C.) 213 Fed. 537, it was held that $36,000 was not excessive damages for injuries causing loss of sight to a coal miner 50 years old.

In Zibbell v. Southern Pac. Co., 160 Cal. 237, 116 Pac. 514, the Supreme Court of California held that $70,000 was not excessive compensation for the loss of one leg and both arms.

In the case of Reeve v. Electric Co., 152 Cal. 99, 92 Pac. 99, the Supreme Court of California sustained a verdict of $30,000 where the plaintiff was severely burned by an electric wire.

In Railway Co. v. Waits, 164 S. W. 870, the Texarkana court upheld a $35,000 verdict where a young lady lost both legs, one at the ankle and one below the knee.

The motion is overruled.